1   David L. Wallach (State Bar No. 233432)
    dwallach@jonesday.com
2   JONES DAY
    555 California Street
3   San Francisco, CA 94105
    Telephone:     (415) 626-3939
4   Facsimile:     (415) 875-5700

5   Attorneys for Defendant
    EXPERIAN INFORMATION SOLUTIONS, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  ERIC ROBERT DREW, | **Case No. C07-00726 SI** |
| 13         Plaintiff, | **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| 14       v. | |
| 15  EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION | |
| 16  SOLUTIONS, INC., TRANSUNION LLC, NCAC, BANK OF AMERICA, FLEET | Date:       July 18, 2008 |
| 17  CREDIT CARD SERVICE, AT&T UNIVERSAL CARD SERVICES, | Time:       9:00 a.m. |
|     | Courtroom:  10 |
| 18  CITIGROUP, BANK ONE CARDMEMBER SERVICES, FIRST USA BANK, N.A., and | Judge:      Hon. Susan Illston |
| 19  DOES 1-100, | |
|     and | |
| 20  FIA CARD SERVICES, N.A. [Previously Doe 1], CITIBANK (SOUTH DAKOTA) | |
| 21  N.A. [Previously Doe 2], CHASE BANK USA, N.A. [Previously Doe 3] | |
| 22  | |
|        Defendants. | |
| 23  | |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................... 1

RELIEF REQUESTED ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.    INTRODUCTION. .................................................................................................. 1

II.   FACTS ..................................................................................................................... 3

    A.    Background. ................................................................................................... 3

        1.    Experian Information Solutions, Inc. ............................................... 3

            i.    Experian maintains reasonable procedures to achieve the maximum possible accuracy of its credit reports. ......................... 3

            ii.    Experian maintains reasonable procedures for reinvestigating consumer disputes. ................................. 4

            iii.    Experian has extensive procedures to combat identity theft .......... 5

    B.    Plaintiff Eric Drew. ...................................................................................... 6

    C.    The Fraudulent Accounts. ............................................................................. 6

    D.    Plaintiff's contacts with Experian ................................................................ 8

        1.    2004. .................................................................................................. 8

        2.    2005. .................................................................................................. 9

            i.    Credit Line Financial: April 2005-August 2005. ............................ 9

            ii.    Communications from plaintiff's attorney: October 2005. ........... 10

    E.    Plaintiff's alleged damages. ....................................................................... 11

III.  ARGUMENT .......................................................................................................... 12

    A.    Plaintiff has no viable claim against Experian for causing or failing to prevent the theft of his identity .................................................................. 12

        1.    These claims are all time-barred. .................................................... 12

        2.    Plaintiff's impermissible purpose claim fails on the facts. ............. 14

        3.    Plaintiff's negligent enablement of identity theft claim also fails. ........... 16

    B.    Plaintiff's claims for inaccurate credit reporting also fail. .................................... 17

        1.    Experian maintained reasonable procedures to ensure the accuracy of plaintiff's credit report. .......................................... 17

        2.    Experian's reinvestigations were reasonable, and its results were accurate. ............................................................... 18

    C.    Plaintiff's parallel CCRAA claims all fail. ................................................ 20

    D.    Plaintiff's misrepresentation claim also fails. ............................................ 21

    E.    Plaintiff cannot show any actual damages arising from conduct of Experian. ................................................................................................... 21

**TABLE OF CONTENTS**
**(Continued)**

Page

F.   Plaintiff is not entitled punitive damages.............................................................. 23

G.   Plaintiff is not entitled to injunctive relief .......................................................... 24

IV.   CONCLUSION. .............................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

Cases

4

*Anderson v. Trans Union LLC*
  367 F. Supp.2d 1225 (W.D. Wis. 2005) ................................................................ 4

5

*Anderson v. Trans Union, LLC*
  345 F. Supp. 2d 963 (W.D. Wis. 2004) ................................................................ 20

6

*Andrews v. TRW, Inc.*
  225 F.3d 1063 (9th Cir. 2000) ............................................................................. 16

7

*Benson v. Trans Union, LLC*
  387 F. Supp. 2d 834 (N.D. Ill. 2005) .................................................................. 18

8

*Branch v. Homefed Bank*
  6 Cal. App. 4th 793 (1992) .................................................................................. 17

9

*Cahlin v. Gen. Motors Acceptance Corp.*
  936 F.2d 1151 (11th Cir. 1991) ........................................................................... 19

10

*Casella v. Equifax Credit Info. Servs.*
  56 F.3d 469 (2d Cir. 1995) .................................................................................. 22

11

*Conrad v. Bank of America*
  45 Cal. App. 4th 133 (1996) ................................................................................ 21

12

*Costa v. Nat'l Action Fin. Servs.*
  No. CIV. S-05-2084 FCD/KJM, 2007 WL 4526510 (E.D. Cal. Dec. 19, 2007) ...... 23

13

*Cousin v. Trans Union Corp.*
  246 F.3d 359 (5th Cir. 2001) .......................................................................... 22, 23

14

*Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*
  707 F.2d 1086 (9th Cir. 1983) ......................................................................... 16, 17

15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
  528 U.S. 167 (2000) ............................................................................................. 24

16

*Garrett v. Trans Union, L.L.C.*
  No. 2:04-CV-00582, 2006 WL 2850499 (S.D. Ohio Sept. 29, 2006) ................ 4, 22

17

*Jianqing Wu v. Trans Union*
  Civ. A. No. AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006) ...................... 4

18

*Jordan v. Equifax Info. Servs., LLC*
  410 F. Supp. 2d 1349 (N.D. Ga. 2006) ............................................................... 23

19

*McCelland v. Experian Info. Solutions*
  No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006) ................................. 4

20

*Morris v. Trans Union LLC*
  420 F. Supp. 2d 733 (S.D. Tex. 2006) ................................................................... 5

21

*Murphy v. Midland Credit Mgmt., Inc.*
  456 F. Supp. 2d 1082 (E.D. Mo. 2006) ............................................................... 18

22

*Myers v. Bennett Law Offices*
  238 F. Supp. 2d 1196 (D. Nev. 2002) .................................................................. 23

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

Page

3

*Olson v. Six Rivers Nat'l Bank*
111 Cal. App. 4th 1 (2003) ................................................................. 20

4

*Pace v. Experian Info. Solutions Inc.*
No. Civ. A. 2:03-CV-45, 2004 WL 1057795 (E.D. Tex. Apr. 28, 2004) ................................. 23

5

6

*Park v. Forest Serv. of U.S.*
205 F.3d 1034 (8th Cir. 2000)................................................................. 24

7

*Perez v. Trans Union, LLC*
526 F. Supp. 2d 504 (E.D. Pa. 2007) ................................................ 16, 20

8

*Perry v. Experian Info. Solutions, Inc.*
No. Civ.A. 05 C 1578, 2005 WL 2861078 (N.D. Ill. Oct. 28, 2005) ......................................... 4

9

10

*Phillips v. Grendahl*
312 F.3d 357 (8th Cir. 2002)................................................................. 23

11

*Quinn v. Experian Solutions*
No. 02 C 5908, 2004 WL 609357 (N.D. Ill. Mar. 24, 2004) ................................. 4, 18

12

*Reynolds v. Hartford Fin. Servs. Group, Inc.*
435 F.3d 1081 (9th Cir. 2006)................................................................. 24

13

*Roller v. GE Med. Sys. Info. Techs., Inc.*
No. Civ. 05-1297 (MJD/AJB), 2005 WL 3542707 (D. Minn. Dec. 5, 2005)........................... 13

14

*Safeco Ins. Co. of Am. v. Burr*
127 S.Ct. 2201 (2007)................................................................. 23, 24

15

16

*Sanchez v. S. Hoover Hosp.*
18 Cal. 3d 93 (1976) ................................................................. 13

17

*Sarver v. Experian Info. Solutions*
390 F.3d 969 (7th Cir. 2004)................................................................. 18

18

*Schmitt v. Chase Manhattan Bank, N.A.*
No. 03-3295 ADM/AJB,  2005 WL 2030483 (D. Minn. Aug. 23, 2005).................................. 4

19

20

*Sherwood v. Finch*
No. CV-00-349-HU, 2000 WL 1862562 (D. Or. Dec. 20, 2000) ............................................ 13

21

*Standfacts Credit Servs., Inc.  v. Experian Info. Solutions, Inc.*
405 F. Supp. 2d 1141 (C.D. Cal. 2005) ................................................................. 11

22

*Stationers Corp. v. Dun & Bradstreet, Inc.*
62 Cal. 2d 412 (1965) ................................................................. 16

23

*Thompson v. San Antonio Retail Merchs. Ass'n*
682 F.2d 509 (5th Cir. 1982)................................................................. 18

24

*Tinsley v. TRW Inc.*
879 F. Supp. 550 (D. Md. 1995) ................................................................. 22

25

*TRW Inc. v. Andrews*
534 U.S. 19 (2001)................................................................. 16

26

*Vogel v. Linde*
23 F.3d 78 (4th Cir. 1994)................................................................. 13

27

28

**TABLE OF AUTHORITIES**
(Continued)

Page

*Wasco Prods., Inc. v. Southwall Techs., Inc.*
  435 F.3d 989 (9th Cir. 2006).............................................................................. 13

Whelan v. Trans Union Credit Reporting Agency
  862 F. Supp. 824 (E.D.N.Y. 1994) ....................................................................... 20

Statutes and Codes

California Civil Code
  § 47(c) ................................................................................................................. 16
  § 1785 ............................................................................................................ passim
  § 1785.14(b) ................................................................................................... 18, 20
  § 1785.16.1 .......................................................................................................... 20
  § 1785.16(a) ................................................................................................... 19, 20
  § 1785.16(b)-(l) ................................................................................................... 20
  § 1785.20.3 .......................................................................................................... 16
  § 1785.20.3(a) ..................................................................................................... 15
  § 1785.31(b) ........................................................................................................ 24
  § 1785.33 ............................................................................................................. 12
  § 1785.34 ....................................................................................................... 21, 24

California Civil Procedure Code
  § 335.1 ................................................................................................................. 12

Fair Credit Reporting Act
  15 U.S.C. § 1679b(1) .......................................................................................... 10
  15 U.S.C. § 1681 ........................................................................................... passim
  15 U.S.C. § 1681(a)(1) ........................................................................................ 15
  15 U.S.C. § 1681a(q)(4) ........................................................................................ 8
  15 U.S.C. § 1681b(a) ...................................................................................... 14, 16
  15 U.S.C. § 1681b(a)(1) ...................................................................................... 14
  15 U.S.C. § 1681b(a)(3)(A) ................................................................................. 14
  15 U.S.C. § 1681c(h) ..................................................................................... 15, 16
  15 U.S.C. § 1681c-1(a)(1) ..................................................................................... 8
  15 U.S.C. § 1681c-1(b)(1) ..................................................................................... 8
  15 U.S.C. § 1681c-2 ............................................................................................ 20
  15 U.S.C. § 1681e(a) ........................................................................................... 14
  15 U.S.C. § 1681e(b) ..................................................................................... 18, 20
  15 U.S.C. § 1681i .............................................................................................. 20
  15 U.S.C. § 1681i(a)(1)(A) .......................................................................... 18, 19, 20
  15 U.S.C. § 1681n ............................................................................................... 23
  15 U.S.C. § 1681p(1) ........................................................................................... 12
  15 U.S.C. § 1681t(a) ............................................................................................ 16

Regulations

16 C.F.R.
  § 603.2 ................................................................................................................. 15
  § 681.1 ................................................................................................................. 15

16 C.F.R. Pt. 600
  App. § 607(3)(A) (2005)...................................................................................... 18
  App. § 611 ........................................................................................................... 19

1   **NOTICE OF MOTION**

2        PLEASE TAKE NOTICE that at 9:00 a.m. on July 18, 2008, before the Honorable Susan

3   Illston in Courtroom 10, located at 450 Golden Gate Avenue, 19th floor, San Francisco,

4   California, defendant Experian Information Solutions, Inc. ("Experian") will move for summary

5   judgment on all of plaintiff's claims for relief against Experian.

6   **RELIEF REQUESTED**

7        Summary Judgment for Experian on plaintiff's (1) First Cause of Action alleging

8   violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*; (2) Third Cause of

9   Action alleging violations of the California Consumer Credit Reporting Agencies Act (CCRAA),

10  Cal. Civ. Code § 1785 *et seq*; (3) Sixth Cause of Action alleging Negligence; and (4) Seventh

11  Cause of Action alleging Misrepresentation.

12  **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.    INTRODUCTION.**

14       This case arises from the theft of plaintiff's identity by a hospital worker while plaintiff

15  was a patient at the Seattle Cancer Care Alliance ("SCCA") in 2003.  The imposter stole

16  plaintiff's personal information from his medical files and used it to open four credit card

17  accounts.  He was caught in March 2004, pled guilty, and was sent to prison and ordered to pay

18  restitution to plaintiff.  That same year, plaintiff settled for $60,000 all of his claims against the

19  SCCA for disclosing his personal information to the imposter.  Now, plaintiff has sued the credit

20  card companies that were defrauded by the imposter, and the three national credit reporting

21  agencies[1] ("CRAs"), including Experian.

22       Plaintiff's claims against Experian fall into two categories.  The first category consists of

23  claims alleging that Experian caused, enabled or failed to prevent the theft of plaintiff's identity

24  in 2003.  Experian's only involvement in the identity theft occurred on December 1, 2003, when

25  it provided plaintiff's credit report in response to a request by First USA Credit Card Services

26

27  ───────────────
         [1] The three national CRAs are Experian, Equifax Information Services, LLC ("Equifax"),
28  and Trans Union LLC ("Trans Union").  In 2007, plaintiff reached a settlement with Trans Union,
    the terms of which are confidential.

1   ("First USA").[2]  Plaintiff cannot base a claim on this conduct because Experian was authorized to

2   provide his credit report by the the Fair Credit Reporting Act (FCRA).  First USA certified to

3   Experian that it would use plaintiff's credit report only for permissible purposes, and Experian

4   had no reason to doubt this certifcation.  The information provided by First USA to Experian to

5   identify plaintiff **matched perfectly** with the information in Experian's database.  Thus, Experian

6   had no reason to believe that First USA was processing a credit card application by an imposter

7   posing as plaintiff, rather than plaintiff himself.  Moreover, any claim based on First USA's

8   viewing of plaintiff's Experian credit report is barred by the applicable two-year statutes of

9   limitations.  As of January 2004, plaintiff knew that First USA had viewed his Experian credit

10  report in issuing a credit card to the imposter.  However, he did not file suit until December 2006.

11  Plaintiff has not pled any form of tolling, and none applies.  Therefore, his claims are time-barred.

12      Plaintiff's second category of claims is based on his contention that Experian was too

13  slow in removing from his credit report a Bank of America account opened in plaintiff's name by

14  the identity thief.  However, any delay in removing this account resulted, not from any conduct of

15  Experian, but from plaintiff's failure to inform Experian that it was fraudulent until October 2005.

16  Although plaintiff contends that he paid a company named Credit Line Financial (CLF) to

17  provide this information to Experian several months earlier, it is undisputed that CLF never did

18  so.  Instead, CLF tried to manipulate the account to have it appear on plaintiff's credit report as a

19  positive item in order to falsely inflate plaintiff's credit score.  When plaintiff finally told

20  Experian, that the Bank of America account was fraudulent, Experian deleted it within days.

21      Finally, both of plaintiff's categories of claims fail because he cannot prove that conduct

22  of Experian caused him any damage.  Experian did not cause or enable the identity theft because,

23  by the time First USA viewed plaintiff's credit report, the imposter had already successfully

24  stolen plaintiff's personal information, and used it to open two credit card accounts.  Thus, the

25  identity theft had already occurred.  Nothing that Experian could have reasonably done would

26  _____

27  [2] First USA is an affiliate of Bank One.  *See* Corrected First Amended Complaint
    ("CFAC") ¶ 17.  In the depositions and documents produced in this action, these entities are
    collectively referred to sometimes as First USA and sometimes as Bank One.  For purposes of

28  this motion, any reference to First USA includes Bank One.

1    have prevented the stress that plaintiff allegedly suffered from having his identity stolen.  Nor

2    was plaintiff damaged by Experian's reporting of the allegedly fraudulent Bank of America

3    account.  Plaintiff was never denied credit as a result of this account appearing on his credit

4    report.  Indeed, he never applied for credit until after it was removed.  Plaintiff contends that he

5    would have applied for two mortgages in the summer of 2005 if the median of his credit score

6    from the three CRAs had been above 720.  Numerous courts have held that this type of claim is

7    too speculative.  Moreover, it fails on the facts because during the relevant period plaintiff's

8    Experian credit score was above 720.  Thus, if his median score was below 720, it was caused by

9    the scores of the other two CRAs.  Raising plaintiff's Experian score would have had no effect on

10   the median.

11   **II.   FACTS.**

12       **A.  Background.**

13           **1.  Experian Information Solutions, Inc.**

14           Experian is a consumer credit reporting agency (CRA).  *See* Browne Decl., ¶ 2.  Experian

15   essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as

16   allowed by the FCRA.  *Id.*  Experian does not originate or create any credit information.  Instead,

17   credit grantors report to Experian information called "trade lines" that consist of credit account

18   information such as account number, account status, payment history and balance.  *Id.*, ¶ 3.

19   When credit grantors report accounts to Experian, they report them along with certain identifying

20   information—such as a consumer's name, social security number, address and date of birth—to

21   link the credit items to the appropriate consumers.  *Id.*, ¶ 4.  Similarly, when a subscriber requests

22   credit information from Experian in the form of a credit report, the subscriber provides the same

23   type of identifying information about the particular consumer.  *Id.*, ¶ 5.

24               **i.   Experian maintains reasonable procedures to achieve the maximum possible**

25                     **accuracy of its credit reports.**

26           After credit data is received by Experian, but before it is added to Experian's credit files,

27   the information is subjected to rigorous quality control and statutory compliance procedures to

28   ensure the maximum, reasonably achievable accuracy of Experian credit reports.  *See* Browne

Decl., ¶ 7.  These procedures include: (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) and continually reviewing and refining Experian's computer systems.  *Id.*

Experian has also implemented procedures designed to involve the consumers who are the subjects of the credit reports in the process in order to further enhance the accuracy of such reports.  Browne Decl., ¶ 8.   To this end, Experian makes available to any consumer a copy of his or her credit report to give them an opportunity to review the information reported, and advise Experian of any potential inaccuracies.  *Id.*  Consumers who disagree with the accuracy or completeness of any items of credit information can submit disputes of those items directly to Experian, and Experian will reinvestigate the item.  *Id.*  Experian actively encourages consumers to request credit disclosures, review them, and submit disputes of any items claimed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.  *Id.*

### ii.   **Experian maintains reasonable procedures for reinvestigating consumer disputes.**

Experian will reinvestigate an item on a consumer's credit report that the consumer contends is inaccurate or incomplete.  *See* Hughes Decl., ¶ 3.  In performing these investigations, Experian considers all relevant information which a consumer provides.  *Id.*  However, because Experian does not have access to creditors' records, Experian reinvestigates disputed items generally by contacting the creditor, explaining the consumer's disputes, and asking for a response concerning the accuracy of the disputed items.  *Id.*  Numerous courts have held that this process satisfies the requirements of the FCRA.[3]

[3] *See, e.g., Perry v. Experian Info. Solutions, Inc.*, No. Civ.A. 05 C 1578, 2005 WL 2861078, at *5 (N.D. Ill. Oct. 28, 2005); *Quinn v. Experian Solutions,* No. 02 C 5908, 2004 WL 609357, at *6 (N.D. Ill. Mar. 24, 2004); *McCelland v. Experian Info. Solutions,* No. 04 C 5686, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006); *Anderson v. Trans Union LLC,* 367 F. Supp.2d 1225, 1233 (W.D. Wis. 2005); *Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499, at *16 (S.D. Ohio Sept. 29, 2006); *Morris v. Trans Union LLC,* 420 F. Supp. 2d 733, 756 (S.D. Tex. 2006); *Jianqing Wu v. Trans Union*, Civ. A. No. AW-03-1290, 2006 WL 4729755, at *8 (D. Md. May 2, 2006); *Schmitt v. Chase Manhattan Bank, N.A.*, No. 03-3295 ADM/AJB,  2005 WL 2030483, at *3 (D. Minn. Aug. 23, 2005).

1    For the reinvestigation process to work properly it is essential for the consumer to

2    correctly identify the potentially erroneous data and the nature of the potential error.  *See* Hughes

3    Decl., ¶ 4; *see also* Wallach Decl. Ex. 24 at 120:21-121:8, 123:24-124:10, 130:11-18.  For

4    example, if a consumer disputes the "status" of an account—*e.g.*, whether it has been timely

5    paid—Experian will conduct a different type of investigation than if a consumer disputes an

6    account as fraudulently arising from identity theft.  *See* Hughes Decl., ¶ 4.  Thus, along with its

7    credit reports, Experian provides a form designed to assist consumers in accurately identifying the

8    item that they wish to dispute, and the nature of their dispute.  *See, e.g, id.*, Ex. 2 at EXP000161.

9    After an investigation is completed, Experian sends the results to the consumer with a

10   summary reflecting the status of the items disputed.  Hughes Decl., ¶ 5.  The summary also

11   contains a statement regarding procedures the consumer may follow if the consumer disagrees

12   with the results of the investigation, including providing Experian with additional information

13   relating to the dispute, contacting the creditor directly, or adding a statement to the consumer's

14   credit report notifying viewers of that report that the consumer disputes the item.  *Id.*

15                **iii.  Experian has extensive procedures to combat identity theft.**

16   Experian has also developed policies and procedures to assist victims of identity theft.

17   Browne Decl., ¶ 9.  Experian maintains a unit of highly trained specialists in its National

18   Consumer Assistance Center to assist consumers who have been victims of identity theft.  *Id.*

19   Further, Experian has implemented a system called "Fraud Shield" which alerts lenders to

20   potentially high risk information, such a social security number that may belong to a child or

21   teenager, or an address that has been associated with past acts of fraud.  *Id.*  In addition, if a

22   consumer provides Experian with appropriate identification information and a copy of an identity

23   theft police report, Experian will delete from a consumer's file any information that the consumer

24   identifies as fraudulent.  *Id.*  Further, Experian has implemented a "fraud delete" function, which

25   allows Experian to delete any address associated with identity theft in a manner that will prevent

26   any new accounts reported from the same address from displaying on the victim's credit report.

27   *Id.*  These are just some of the procedures Experian has designed to combat identity theft.  *Id.*

28   However, for these systems to work, Experian must be informed that a consumer is a victim of

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

1    identity theft, or that information associated with a consumer is high risk.  *Id*., ¶ 10.

2        **B.  Plaintiff Eric Drew.**

3        Plaintiff is an identity theft victim and leukemia survivor.  *See* Corrected First Amended

4    Complaint ("CFAC") at 1.  In September 2003, he was admitted to the SCCA for a bone-marrow

5    transplant to treat his leukemia.  *Id*., ¶ 36.  While there, one of his care-givers, a phlebotomist

6    named Richard Gibson ("the imposter"), stole plaintiff's personal information—*i.e.* his name,

7    date of birth and social security number—from his medical files, and began using it to submit

8    fraudulent credit card applications in plaintiff's name.  *See* Wallach Decl., Ex. 1 at PID 628, and

9    Ex. 22 at 315:3-10.

10       **C.  The Fraudulent Accounts.**

11       The imposter submitted the first fraudulent application to Citibank/AT&T Universal

12   (Citibank) on October 17, 2003.  *See* CFAC, ¶ 134; *see also* Wallach Decl., Ex. 1 at PID 629;

13   Ex. 2.  He used plaintiff's exact social security number, name and date of birth, but a new Seattle

14   address which had not appeared before on plaintiff's credit reports.  *See* Wallach Decl., Ex. 2 at

15   CITI 0078.  To process the application, Citibank requested and received a credit report from

16   ***Equifax***.  *See Id*., Ex. 2 at CITI 0084, Ex. 3 at EIS_Drew_000034; *see also* Hughes Decl., ¶ 10.

17   Citibank opened the account (No. 5491 1303 **** ****), and then reported it to Experian.

18   Hughes Decl., Ex. 1 at EXP000130.  Based on the Citibank account, the Seattle address began

19   reporting on plaintiff's Experian credit report on October 24, 2003.  Hughes Decl., ¶ 7.

20       The imposter submitted the second fraudulent application to Chase Bank USA, N.A.

21   ("Chase") on November 11, 2003.  *See* CFAC, ¶ 151; *see also* Wallach Decl., Ex. 1 at PID 629;

22   Ex. 4.  Once again, the imposter used the Seattle address along with plaintiff's exact name, social

23   security number and date of birth.  *See* Wallach Decl., Ex. 4 at CH00007.  Chase requested and

24   received a credit report from ***Trans Union***.  *Id.*, Ex. 4 at CH00009; *see also* Hughes Decl., ¶ 10.

25   By this time, the Seattle address already appeared on plaintiff's Trans Union credit report,

26   presumably as a result of the Citibank account.  *Id*., Ex. 4 at CH00009.   Thus, the information

27   that Chase provided to Trans Union regarding plaintiff's name, date of birth, social security

28   number and address matched perfectly the information in Trans Union's database.  *Id*.  Chase

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

1    opened the account (No. 4226 9703 **** *****) and began reporting to the CRAs, including

2    Experian, that plaintiff had opened another new credit card at the Seattle address.  *See* CFAC,

3    ¶ 153; Hughes Decl. ¶ 8.

4            The imposter submitted the third fraudulent application to First USA Bank on November

5    28, 2003.  *See* CFAC, ¶ 174; *see also* Wallach Decl., Ex. 1 at PID 629.  To process the

6    application, First USA requested a credit report from ***Experian***.  *See* Hughes Decl. ¶ 9.  It used

7    plaintiff's exact name, social security number, date of birth and the Seattle address.  *See* Wallach

8    Decl., Ex. 5 at CH00043, CH00049.  As shown above, by this time, Citibank and Chase had

9    already reported to Experian that plaintiff had two open credit card accounts at the Seattle

10   address.  Thus, when Experian received the request for plaintiff's credit report from First USA

11   there was ***an exact match of all information—****i.e.*, name, address, date of birth and social

12   security number—between the data provided by First USA and the information in Experian's

13   database.  *See* Wallach Decl., Ex. 5 at CH00049.  Accordingly, Experian provided plaintiff's

14   credit report to First USA, and First USA opened the account.  *See* CFAC, ¶ 174; Hughes Decl.

15   ¶ 9.

16          The imposter submitted the final application to Fleet/Bank of America on January 5, 2004.

17   *See* CFAC, ¶ 95; *see also* Wallach Decl., Ex. 1 at PID 629.  Bank of America obtained a ***Trans***

18   ***Union*** credit report to process the application.  *See* Wallach Decl., Ex. 6 at TU 0111; *see also*

19   Hughes Decl., ¶ 10.  Bank of America opened the account (No. 4305 5000 **** ****).  *See*

20   CFAC, ¶ 99.

21          On March 2, 2004, the imposter was arrested by the Seattle police.  *See* Wallach Decl.,

22   Ex. 7.  He pled guilty and, on December 16, 2004, he was sentenced, *inter alia*, to 16 months in

23   prison, and ordered to pay $6,430.00 to plaintiff for the anticipated cost of having his attorney

24   contact the CRAs and banks to remove information relating to the fraudulent accounts from his

25   credit report.  *Id*., Ex. 8 at PID 549; Ex. 9.  Plaintiff also received $60,000 from the SCCA, the

26   imposter's employer, to settle his claims arising from the identity theft.  *Id*., Ex. 10.  This

27   settlement included $5,000.00 for plaintiff's anticipated expenses in hiring a credit repair clinic to

28   help remove the information arising from the identity theft from his credit reports.  *Id*., Ex. 11 at

PID 779.

**D.  Plaintiff's contacts with Experian.**

**1.  2004.**

Plaintiff's first contact with Experian following the theft of his identity occurred on January 20, 2004.[4]  Hughes Decl. ¶¶ 11-12.  Plaintiff contacted Experian via its automated voice-mail system to request an "initial fraud alert" on his credit report.[5]  *Id.*, ¶ 12.  Experian duly entered the initial fraud alert and sent notice to plaintiff along with a copy of his current Experian credit report.  *Id.*, ¶ 13 & Ex. 1; *see also* Wallach Decl., Ex. 12.  Plaintiff received and reviewed this report, which showed the Seattle address established by the imposter and all four accounts allegedly arising from the identity theft.  Hughes Decl., Ex. 1; Wallach Decl., Ex. 21 at 158:7-19, 164:3-16.  The report also clearly indicated that First USA had viewed plaintiff's credit report on November 28, and December 1, 2003.  *See* Hughes Decl., Ex. 1 at EXP000133.  Nevertheless, at this time, plaintiff did not notify Experian that any information on his credit report was inaccurate or fraudulent, or request that Experian delete or reinvestigate any information.  *Id.*, at ¶ 12.  The credit report that Experian sent to plaintiff also explained the steps required to obtain an extended 7-year fraud alert, or to delete information resulting from identity theft.[6]  *Id.*, Ex. 1 at EXP000124 & 000136.  However, plaintiff did not contact Experian to request either of these actions until twenty-two months later, in October 2005.  *See* Hughes Decl., ¶ 14.

---

[4] Plaintiff believes that he may have contacted Experian in November 2003, however, he is uncertain and he has no evidence to substantiate his suspicion.  *See* Wallach Decl., Ex. 21 at 188:2-189:21, 160:25-161:6; Ex. 22 at 254:18-255:2.  Experian's procedures require it to record contacts with a consumer, and its records contain no evidence of any contact with plaintiff in November or December 2003.  *See* Hughes Decl. ¶ 11-12.

[5] An "initial fraud alert" is a notice placed on a consumer's credit report when a consumer "asserts in good faith ***a suspicion*** that [he] has been or is about to become a victim of fraud or related crime."  *See* 15 U.S.C. § 1681c-1(a)(1) (emphasis added).  It conveys the consumer's suspicion to credit furnishers viewing the consumer's credit report, and instructs them "not [to] extend credit without first contacting [the consumer] personally and verifying all applicant information."  *See* Hughes Decl., Ex. 1 at EXP000127.  It remains on the consumer's credit report for 90 days, unless the consumer takes action to confirm to Experian that he actually is a victim of identity theft.

[6] An "extended fraud alert" remains on the consumer's credit report for 7 years and prevents the consumer's name from being given by the credit reporting agency for purposes of any credit solicitation for 5 years.  *See* 15 U.S.C. § 1681c-1(b)(1).  To request such an alert, a consumer must submit to Experian a letter stating that the consumer is a victim of identity theft, along with appropriate identification information.  *See* 15 U.S.C. §§ 1681c-1(b)(1), 1681a(q)(4); *see also* Hughes Decl., Ex. 1 at EXP000124.

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

2. **2005**.

  i.   **Credit Line Financial: April 2005-August 2005**.

   In March 2005, plaintiff hired a credit repair clinic called Credit Line Financial (CLF). *See* Wallach Decl., Ex. 22 at 320:20-321:8. By this time, the Bank of America account was the only remaining credit account on plaintiff's Experian credit report resulting from the identity theft.[7] Hughes Decl., ¶ 15. In accordance with the information provided to it by Bank of America, Experian reported this account as "closed" with a prior 120-day delinquency. *See id.*, Ex. 2 at EXP000151. Plaintiff contends that he asked CLF to help delete this account from his credit reports. *See* Wallach Decl., Ex. 22 at 320:20-321:8. However, there is no evidence CLF ever attempted to do so.

   Instead, the evidence shows that CLF tried to manipulate the Bank of America account to achieve the maximum possible benefit for plaintiff's credit score, rather than to have it deleted in order to accurately reflect plaintiff's credit history. *See* Wallach Decl., Ex. 24 at 134:20-135:3. One of the primary factors adversely affecting plaintiff's credit score was the small number of recent credit accounts. *See* Browne Decl. ¶ 16; *see also* Wallach Decl., Ex. 24 at 88:20-89:12. Changing the fraudulent Bank of America account to a recent, positive account would have benefited plaintiff more than deleting the account. *See* Browne Decl. ¶ 17; *see also* Wallach Decl., Ex. 24 at 136:8-20. This is precisely what CLF tried to do.

   On April 6, CLF logged into Experian's online system in plaintiff's name using his identification information. *See* Hughes Decl., ¶ 17; *see also* Wallach Decl., Ex. 21 at 181:11-19. CLF entered a dispute of the Bank of America account by falsely informing Experian that ***plaintiff had consistently paid the account on time***. *See* Hughes Decl. ¶ 17. Experian promptly investigated CLF's claim, and confirmed that, contrary to CLF's representations, the account had been delinquent. *Id.*, ¶¶ 18-19 & Ex. 3. Experian sent plaintiff the results of this investigation along with his current credit report on May 18. *Id.*, Ex. 4.

---

[7] In addition to credit accounts, Experian reports also lists credit "inquiries," *i.e.*, each time in recent years that a credit furnisher has viewed a consumer's Experian report. Although several inquiries arising from allegedly fraudulent activity continued to appear on plaintiff's credit report into 2005, the effect of these inquiries on plaintiff's credit score would have been negligible. *See* Wallach Decl., Ex. 24 at 79:12-23.

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

1   CLF tried again on July 19.  *See* Hughes Decl. ¶ 20.  CLF again informed Experian that

2   plaintiff had consistently paid the account on time.  *Id*.  Once again, Experian promptly initiated

3   an investigation and determined that CLF's dispute was without merit.  *Id*., ¶¶ 21-22 & Ex. 5.

4   Experian sent the results of this investigation along with a current credit report to plaintiff on

5   August 15.  *Id*., Ex. 6.

6       CLF initiated similarly erroneous disputes with the two other national CRAs, informing

7   both Equifax and Trans Union that plaintiff had made all payments to the Bank of America

8   account on time.  *See* Wallach Decl., Exs. 13, 14 & 15.  These knowingly false disputes not only

9   delayed the deletion of the Bank of America account from plaintiff's credit report, but also

10  violated federal law.  *See* 15 U.S.C. § 1679b(1) (prohibiting credit repair organizations from

11  making "any statement . . . which is untrue or misleading . . . with respected to any consumer's . .

12  . credit standing").

13      Thus, CLF never informed Experian that the Bank of America account was a result of

14  identity theft, or asked that the account be deleted.  On the contrary, by informing Experian on

15  plaintiff's behalf that plaintiff had consistently paid the account on time, CLF implicitly affirmed

16  that it belonged to plaintiff.

17          **ii.  Communications from plaintiff's attorney: October 2005.**

18      Through his attorney, plaintiff contacted Experian by telephone on October 6, 2005 and

19  informed Experian for the first time that the Bank of America account was the result of identity

20  theft and did not belong to him.  *See* Hughes Decl., ¶ 23.  Experian promptly initiated a fraud

21  investigation.  *Id*.  On Friday, October 7, plaintiff's attorney sent two facsimiles to Experian

22  which included a police report identifying plaintiff as an identity theft victim.  *Id*., ¶ 24 & Exs. 7

23  & 8.  The fax also contained a copy of plaintiff's credit report on which plaintiff circled several

24  items identified as fraudulent, and asked Experian to delete them.  *Id*.  Experian promptly deleted

25  all of the items requested by plaintiff, and mailed him an updated credit report on October 11.

26  *Compare* Hughes Decl., Ex. 7 *with* Ex. 9.  Thus, ***Experian deleted the Bank of America account***

27  ***within five days of being informed by plaintiff that it was fraudulent***.  *See* Wallach Decl., Ex. 24

28  at 140:12-19.

1    E.  **Plaintiff's alleged damages**.

2           Based on the foregoing facts, plaintiff alleges that Experian is liable for (1) the emotional

3    distress caused by having his identity stolen by one of his care-givers at the SCCA, and his

4    resulting fear that the imposter would murder him to prevent detection; (2) his body's rejection of

5    a bone-marrow transplant in January 2004 which he alleges was caused by this stress; and (3) the

6    side-effects of his second bone-marrow transplant.  *See* Wallach Decl., Ex. 16 & Ex. 21 at

7    141:25-144:14.  Plaintiff has no evidence that Experian caused the imposter to steal his identity,

8    or that anything Experian could have done would have prevented this crime.  Plaintiff also has no

9    evidence that the stress of the identity theft caused his bone-marrow transplant to fail, or that

10   Experian was responsible in any way for his second bone-marrow transplant.

11          Plaintiff also alleges that as a result of the Bank of America account appearing on his

12   Experian credit report in the summer of 2005, he was denied two mortgages: (1) a no-money-

13   down, adjustable-rate, low-documentation, interest-only, $320,000 mortgage on an investment

14   property, and (2) a refinance loan on a house owned by his then-girlfriend (now-fiancée), Nicole

15   Floor.[8]  *See* Wallach Decl., Ex. 16; Ex. 21 at 79:13-83:22; Ex. 23 at 97:12-17; Ex. 25 at 33:7-18,

16   36:16-20, 71:21-24.  However, ***plaintiff never applied for either loan***.  *Id*., Ex. 25 at 41:15-42:8,

17   52:3-15.  Rather, his mortgage-broker friend—Fred Kotrozo—merely evaluated whether, in

18   Kotrozo's opinion, plaintiff qualified for loans below a certain interest rate (although he does not

19   know what that interest rate was).  *Id*., Ex. 25 at 93:23-94:4.  Kotrozo allegedly pulled tri-merge

20   credit reports in June and September of 2005, saw that the median of the credit scores reported by

21   the three national CRAs was below 720, and concluded that plaintiff could not secure either loan.[9]

22   *Id*., Ex. 25 at 35:17-23, 39:20-40:1, 40:11-23, 49:15-19, 83:7-11.  No further steps were taken,

23          [8] Curiously, Ms. Floor has no recollection of trying to refinance her house with Mr. Drew
     on the mortgage.  *See* Wallach Decl., Ex. 26 at 59:3-18.  This is notable, because the house is
24   owned entirely by Ms. Floor and hers is the only name on the title.  *Id*., Ex. 26 at 22:1-5, 25:14-
     16.  To refinance the home with Mr. Drew on the mortgage, Ms. Floor would have been required
25   to add his name to the title, thus gifting him a partial ownership of her house.  *Id*., Ex. 25 at 74:6-
     18.

26          [9] Tri-merge credit reports consist of compilations of the credit information regarding a
     particular consumer in the databases of all three national CRAs.  *See e.g., Standfacts Credit*
27   *Servs., Inc.  v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1146 (C.D. Cal. 2005).
     Pursuant to regulations of government-sponsored loan entities such as Freddie Mac and Fannie
28   Mae, virtually all residential mortgage transactions must use tri-merged credit reports.  *Id*.

1   and there is no documentation for either transaction.  *Id*., Ex. 25 at 40:11-23, 42:2-8; Ex. 22 at

2   299:15-300:8.

3       Kotrozo does not remember what plaintiff's Experian credit score was when he

4   considered either loan, whether it was the median score, or whether it was below 720 in either

5   June or September 2005.  *See* Wallach Decl., Ex. 25 at 35:15-16.   The only Experian credit

6   scores in the record from that time period are above 720.  These are a January 2005 score of 746,

7   and a September 2005 score of 729.  *See id*., Exs. 17 & 18.  Kotrozo also does not know whether

8   plaintiff would have received either loan if his median credit score had been above 720, given,

9   *inter alia*, that plaintiff was unemployed, his only income consisted of less than $1,400.00 per

10  month in disability payments, and he did not intend to reside in the property.  *See id.*, Ex. 25 at

11  34:4-15, 36:21-25, 37:18-25; *see also id*., Ex. 21 at 61:9-16.

12  **III.  <u>ARGUMENT</u>.**

13      **A.  <u>Plaintiff has no viable claim against Experian for causing or failing to prevent the</u>**

14      **<u>theft of his identity</u>.**

15      Plaintiff alleges that Experian should not have provided his credit report to First USA in

16  December 2003.  He contends that Experian should have known that the First USA application

17  was submitted by an imposter who had stolen his identity.  Based on this contention, plaintiff

18  asserts claims under the FCRA, CCRAA and common law negligence.  These claims fail on the

19  facts and the law.

20          **1.  <u>These claims are all time-barred</u>.**

21      Plaintiff's FCRA, CCRAA and common law negligence claims are each time-barred as of

22  two years after plaintiff knew or should have known of the alleged conduct that is the basis for

23  liability.  *See* 15 U.S.C. § 1681p(1) (FCRA claims must be brought "2 years after the date of

24  discovery by the plaintiff of the violation that is the basis for such liability."); Cal. Civ. Code

25  § 1785.33 ("An action to enforce any liability created under this chapter may be brought . . .

26  within two years from the date the plaintiff knew of, or should have known of, the violation");

27  Cal Civ. Proc. Code § 335.1 (statute of limitations for negligence actions is two years).

28      Plaintiff discovered that he was a victim of identity theft in December 2003.  *See* Wallach

1  Decl., Ex. 21 at 39:11-16; Ex. 19. One month later, in January 2004, he received and reviewed

2  his Experian credit report. *Id*., Ex. 21 at 158:7-23, 164:3-16; Ex. 12. This report clearly indicated

3  that First USA had viewed his Experian credit report on November 28 and December 1, 2003,

4  and that it had opened an account in his name in December 2003. *Id*., Ex. 12 at PID 68. Thus,

5  the statute of limitations on any claim arising from First USA's viewing of plaintiff's credit report

6  began to run no later than January 2004, and expired in January 2006.

7  Although plaintiff was represented by counsel during much of the statutory period—by

8  Seattle attorney Greg Ursich as of May 2004 (*See* Wallach Decl., Ex. 23 at 194:4-197:19), and by

9  his current counsel as of April 2005 (*id*., Ex. 21 at 70:21-71:5)—he did not file suit until

10 December 18, 2006 (dkt. 1), eleven months after his claims were time-barred.

11 Nor can plaintiff argue that the statute of limitations was tolled by his medical condition.

12 The FCRA contains no tolling provisions, and therefore none applies. "The blackletter rule,

13 recognized by the Supreme Court since at least 1883, is that a statute of limitations runs against

14 all persons, even those under a disability, unless the statute expressly provides otherwise. This

15 rule is regularly applied to federal statutes that contain a limitations period but no exception for

16 disability." *See, e.g., Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994) (citations omitted); *see also*

17 *Sherwood v. Finch*, No. CV-00-349-HU, 2000 WL 1862562, at *8 (D. Or. Dec. 20, 2000).

18 As for plaintiff's CCRAA and negligence actions, California law recognizes tolling only

19 for mental disability, not physical disability. "Code of Civil Procedure sections 352 and 354

20 describe the particular personal disabilities which will toll the statute of limitations. These

21 statutory conditions have been held to be exclusive, and they do not include either physical

22 debility or hospital confinement." *See Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 102 (1976).

23 Nor can plaintiff claim that he was mentally disabled. First, he has not pled any mental disability,

24 and is therefore precluded from raising such an argument to oppose summary judgment. *See,*

25 *e.g., Roller v. GE Med. Sys. Info. Techs., Inc.*, No. Civ. 05-1297 (MJD/AJB), 2005 WL 3542707,

26 at *2 (D. Minn. Dec. 5, 2005) ("The party who asserts the applicability of tolling bears the burden

27 of pleading circumstances that would make tolling appropriate."); *Wasco Prods., Inc. v.*

28 *Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not

1    a procedural second chance to flesh out inadequate pleadings.").  Second, plaintiff cannot prove

2    that he was under any mental disability sufficient to toll the statute of limitations for a twelve

3    month period beginning in January 2004.  On the contrary, in June 2004 he was mentally capable

4    of negotiating a $60,000.00 settlement with the SCCA over claims arising from the same incident

5    which is the basis for the present action.  *See* Wallach Decl., Exs. 10 & 11.

6           In short, all of plaintiff's claims that are predicated on the allegation that Experian caused,

7    enabled or failed to prevent the theft of plaintiff's identity and issuance of credit cards to the

8    identity thief are time-barred.

9           **2.   Plaintiff's impermissible purpose claim fails on the facts.**

10          Plaintiff erroneously claims that Experian violated the FCRA by providing his credit

11   report to First USA in connection with a credit card application submitted by the imposter.

12   However, the FCRA allows Experian to provide a consumer's credit report to any person "which

13   it has ***reason to believe intends*** to use the information in connection with a credit transaction

14   involving the consumer."  *See* 15 U.S.C. § 1681b(a)(3)(A) (emphasis added).  Thus, Section

15   1681b(a) turns on the intent of the credit furnisher, and Experian's reasonable belief regarding

16   that intent.  Further, section 1681b(a)(1)'s implementation provisions provide that where a

17   certified credit furnisher informs a CRA that it intends to use a credit report for a permissible

18   purpose, the CRA may provide the report unless "it has reasonable grounds for believing that the

19   consumer report will not be used for a [permissible] purpose."  *See* 15 U.S.C. § 1681e(a).

20          First USA certified to Experian that it intended to use plaintiff's credit report for only

21   permissible purposes, and Experian had no reasonable grounds for disbelieving it.[10]  *See* Browne

22   Decl. ¶ 15; *See* 15 U.S.C. § 1681e(a).  Indeed, there is no evidence in the record that First USA

23   <u>intended</u> to open a credit account for an imposter.  By all available evidence, First USA intended

24   to open an account for plaintiff, and thus Experian had reason to believe that First USA had a

25   permissible purpose for the inquiry.  The statute requires only that Experian have a reasonable

26   belief as to the intent of the credit grantor.  It does not require that Experian determine whether

27   the credit grantor is being defrauded by an imposter posing as a consumer.

28   _____

        [10] First USA is a certified credit furnisher.  Browne Decl. ¶ 14.

1    Even if Experian had some duty to verify the identity of the credit applicant, here the

2    name, social security number, date of birth and address provided by First USA was an exact

3    match to the information in Experian's system relating to plaintiff.  *Supra* at 7.  Thus, there was

4    nothing about the request from First USA that could have reasonably caused Experian to believe

5    that plaintiff was not involved in the transaction.

6    Moreover, had the Seattle address not yet been in Experian's database, it still would have

7    been reasonable for Experian to provide a credit report to a furnisher that supplied plaintiff's

8    exact identification information (*i.e.* name, social security number and date of birth), but a new

9    address.[11]  *See* Browne Decl. ¶ 12.  Indeed, both the FCRA and the CCRAA expressly

10   contemplate that CRAs will provide credit reports in these circumstances, and place the onus on

11   the credit furnishers—not the CRAs—to verify that they are dealing with the consumer, and not

12   an imposter who stole the consumer's identity.  *See* 15 U.S.C. § 1681c(h); Cal Civ. Code

13   § 1785.20.3(a); 16 C.F.R. § 681.1.  This is because, unlike credit furnishers, CRAs normally have

14   no direct contact with a consumer who submits an application for credit, nor any reasonable

15   means of initiating such contact.  *See* Browne Decl. ¶¶ 12-13 .  Millions of Americans move

16   every year and few, if any, report these moves to Experian.  *Id.*; *See* Wallach Decl., Ex. 24 at

17   110:15-18; Ex. 21 at 194:8-14.  If Experian could not provide credit reports for applications

18   submitted from new addresses, then consumers with good credit histories would lose those

19   histories every time they moved.  *See* Browne Decl., ¶ 12.  Conversely, consumers with bad

20   credit histories could hide their past merely by changing their residence or mailing address.  *Id.*

21   Such a procedure would put an end to the system of credit reporting, and cause unimaginable

22   economic disruption.  *Id.*; 15 U.S.C. § 1681(a)(1) ("The banking system is dependent upon fair

23   and accurate credit reporting").

24   Plaintiff cannot show that it is possible, without destroying the credit reporting system, to

25   implement a program which does not provide a consumer's credit report when a furnisher

26   _____

27   [11] The FTC, which is charged by Congress to interpret and enforce the FCRA (15 U.S.C. § 1681s), defines "identifying information" to include, *inter alia*, name, social security number and date of birth.  16 C.F.R. § 603.2.  A consumer's address is not included in the FTC's

28   definition of identification information.

1    provides a consumer's exact identification information along with a new address.  Thus, he

2    cannot claim that Experian's failure to implement such a system in 2003 was negligent or

3    unreasonable.[12]  *See, e.g., Perez v. Trans Union, LLC*, 526 F. Supp. 2d 504, 509 (E.D. Pa. 2007)

4    ("Plaintiff . . . ha[s] the burden of proving what, at a minimum, would have been reasonable,

5    under the circumstances, including the business costs of any suggested alternative").

6             **3.  Plaintiff's negligent enablement of identity theft claim also fails.**

7             The foregoing shows that Experian had reason to believe that First USA intended to use

8    plaintiff's credit report for permissible purposes, and therefore Experian was authorized by

9    federal law to provide it.  *See* 15 U.S.C. § 1681b(a).  Accordingly, California negligence law

10   cannot prohibit or punish this conduct.  *See* 15 U.S.C. § 1681t(a).  But even if California law

11   *could* sanction this conduct, it does not.  Instead, it creates a statutory privilege for "a

12   communication, without malice, to a person interested therein, [] by one . . . who is requested by

13   the person interested to give the information."  *See* Cal Civ. Code § 47(c).  This privilege applies

14   to credit reporting, and blocks plaintiff's claim.  *Stationers Corp. v. Dun & Bradstreet, Inc.*, 62

15   Cal. 2d 412, 418 (1965).

16            Plaintiff's negligent enablement of identity theft claim also fails because he cannot show

17   that Experian's provision of his credit report to First USA caused any compensable damage for

18   two reasons.  *Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*, 707 F.2d 1086,

---

19   [12] *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000)—in which a three-judge panel
20   held that it was a jury question whether it was reasonable for a CRA to provide a credit report
     where a consumer's last name, first initial and social security number matched, but a new address
     was used—is inapplicable here for four reasons.  First, *Andrews* is not binding because the
21   Supreme Court unanimously reversed the three-judge panel, and held that the relevant claim was
     time-barred.  *TRW Inc., v. Andrews*, 534 U.S. 19 (2001).  This vacated the panel's ruling that
22   factual issues were sufficient to preclude summary judgment.  Second, *Andrews* was decided
     prior to the 2003 amendments to the FCRA, which added section 1681c(h), and the 2002
23   amendment to the CCRAA which added section 1785.20.3.  As shown above, these amendments
     reflect Congress' and the California legislature's judgment that, in the case of an application for
24   credit from a new address, it is the duty of the credit furnisher, not the CRA, to verify that the
     applicant is not an imposter.  Third, the factual record in *Andrews* differed crucially from the
25   record here.  In *Andrews*, the plaintiff designated a computer programming expert to testify
     regarding proposed, alternate procedures which he believed could reasonably improve the system
26   used by defendant.  225 F.3d at 1068.  No comparable expert has been designated here.  *See*
     Wallach Decl., Ex. 24 at 82:21-83:8, 143:9-23, 148:13-25.  Fourth, unlike *Andrews*, here the
27   imposter did not provide only the last name, first initial and social security number of the
     consumer.  He provided the consumer's full name, date of birth, social security number, and an
28   address already appearing in Experian's database as associated with plaintiff.

1   1092 (9th Cir. 1983) (to state a claim for negligence, plaintiff must show that the challenged

2   conduct caused the alleged injury).  **First**, the imposter had stolen plaintiff's identity before First

3   USA viewed plaintiff's Experian credit report.  The fraudulent Citibank and Chase accounts had

4   already been opened, and the fraudulent Seattle address has already entered the databases of the

5   three national CRAs.  *Supra* at 6-7.  Thus, the identity theft had already occurred.  **Second**,

6   plaintiff was never forced to pay any charges on the First USA account, and was never denied

7   credit based on the appearance of this account on a credit report.  *See* Wallach Decl., Ex. 21 at

8   57:19-58:6, 87:12-88:1.  Nor can plaintiff claim that the account caused him emotional distress.

9   Such a claim is factually implausible because the account was closed less than a week after

10  plaintiff learned that it existed, and removed from plaintiff's credit reports within a month.  *Id.*,

11  Ex. 21 at 37:22-38:4; Ex. 27.  Moreover, it is legally precluded because emotional distress

12  damages are recoverable only in limited categories of negligence cases, *e.g.*, negligent

13  mishandling of a corpse or misdiagnosis of disease  *See, Branch v. Homefed Bank*, 6 Cal. App.

14  4th 793, 800 (1992).  Plaintiff's negligent enablement of identity theft claim does not fall within

15  any of these categories.  *Id.*

16      **B.  Plaintiff's claims for inaccurate credit reporting also fail.**

17          Plaintiff's second category of claims alleges that Experian should have known that the

18  Bank of America account was the result of identity theft, or should have discovered that the

19  account was fraudulent when Credit Line Financial disputed its payment history.  These claims

20  fail because Experian was not notified, and had no reasonable means of discovering, that the

21  Bank of America account was fraudulent until plaintiff informed Experian of this fact in October

22  2005.

23      **1.  Experian maintained reasonable procedures to ensure the accuracy of plaintiff's

24      credit report.**

25          As shown above (p. 3-4), Experian maintains reasonable procedures to assure the

26  maximum possible accuracy of consumers' credit reports.  Plaintiff erroneously alleges that

27  Experian's procedure must be deficient because the Bank of America account appeared on his

28  credit report even though it was opened by an imposter who stole plaintiff's identity.  *See*

1    15 U.S.C. § 1681e(b); Cal. Civ. Code § 1785.14(b).  However, "Section 1681e(b) does not

2    impose strict liability for any inaccurate credit report, but only a duty of reasonable care in

3    preparation of the report."  *Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513

4    (5th Cir. 1982).  A CRA cannot be held liable for accurately reporting information from a source

5    whose reliability it has no reason to question—even if that information turns out to be

6    erroneous—until the consumer disputes the information with the CRA.  *Sarver v. Experian Info.*

7    *Solutions*, 390 F.3d 969, 972 (7th Cir. 2004); *see also* 16 C.F.R. Pt. 600, App. § 607(3)(A) (2005)

8    ("If a consumer reporting agency accurately transcribes, stores and communicates consumer

9    information received from a source that it reasonably believes to be reputable, and which is

10   credible on its face, the agency does not violate this section simply by reporting an item of

11   information that turns out to be inaccurate.").

12        Here, plaintiff contends that his Experian credit report was inaccurate because the Bank of

13   America account belonged to the imposter, not to plaintiff himself.  However, plaintiff does not

14   dispute (a) that Bank of America reported this account as belonging to plaintiff;[13] (b) that Bank of

15   America is a reputable institution legitimately in the business of issuing consumer credit; and

16   (c) that the information reported by Bank of America was credible on its face.  Thus, as a matter

17   of law, Experian incurs no liability for accurately transcribing and communicating the

18   information reported to it by Bank of America.  *See Sarver*, 390 F.3d at 972; *see also, e.g., Quinn*

19   *v. Experian Solutions,* No. 02 C 5908, 2004 WL 609357, at *3-*4 (N.D. Ill. Mar. 24, 2004);

20   *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006); *Benson v.*

21   *Trans Union, LLC*, 387 F. Supp. 2d 834, 841-42 (N.D. Ill. 2005).

22        **2.  Experian's reinvestigations were reasonable, and its results were accurate.**

23        If a consumer notifies Experian that he or she disputes the completeness or accuracy of

24   any item of information in a consumer's credit report, Section 1681i(a)(1)(A) of the FCRA

25   requires Experian to conduct a "reasonable reinvestigation to determine whether the disputed

26   information is inaccurate."  Plaintiff erroneously asserts that Experian's reinvestigation of the two

27   ───────────────────
     [13] On the contrary, plaintiff's allegation that Bank of America reported the account to
28   Experian and Equifax as belonging to plaintiff is the basis for his claims in this case against Bank
     of America.

1    disputes of the Bank of America account initiated by CLF in April and July 2005 were not

2    reasonable because Experian did not discover that the account was fraudulent and delete it.  *See*

3    15 U.S.C. § 1681i(a)(1)(A); Cal. Civ. Code § 1785.16(a).  This claim fails because, as shown

4    above (p. 9-10), plaintiff did not dispute the account as fraudulent, or dispute his ownership of the

5    account at all.  On the contrary, rather than asking Experian to delete the Bank of America

6    account, plaintiff informed Experian that he had consistently paid it on time.  Thus, plaintiff not

7    only failed to notify Experian that the account was not his, but actually ***affirmed that it belonged***

8    ***to him.***

9        Plaintiff does not contend that Experian failed to reasonably reinvestigate the dispute that

10   he submitted, *i.e.* whether the account was actually closed and previously delinquent.  Nor does

11   he claim that Experian's results were inaccurate.  Indeed, it is undisputed that the Bank of

12   America account had been delinquent.

13       Instead, plaintiff argues that Experian should have initiated an investigation into whether

14   the Bank of America was fraudulent, even though plaintiff not only failed to inform

15   Experian that it did not belong to him, but actually affirmed his ownership of the account.  This

16   claim fails as a matter of law.  When a consumer disputes an item of information on his credit

17   report, a CRA is required only to "conduct a reasonable reinvestigation to determine whether ***the***

18   ***disputed information*** is inaccurate."  15 U.S.C. § 1681i(a)(1)(A)(emphasis added); *Cahlin v.*

19   *Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (CRA has duty to

20   reinvestigate "information brought to its attention by the consumer").  Here, plaintiff disputed the

21   payment history of the Bank of America account.  He did not dispute his ownership of that

22   account.  Thus, Experian had no duty to reinvestigate whether the account belonged to plaintiff.

23       Moreover, it is not reasonable for Experian to conduct a fraud investigation in response to

24   a dispute relating to an account's payment history.  *See* 16 C.F.R. Pt. 600, App., Sec. 611, pt. 2

25   (appropriate investigative steps "[d]epend[] on the nature of the dispute").  Plaintiff claims that

26   Experian should have investigated whether the Bank of America account was fraudulent as a

27   result of a letter purportedly written to Experian by the FBI in April 2004, a year before the first

28   CLF dispute.  *See* Wallach Decl., Ex. 20.  This argument fails for two reasons.  First, there is no

1    evidence that this unauthenticated letter was ever sent and, in any event, Experian never received

2    it.  *See* Hughes Decl. ¶ 25; *see also, Whelan v. Trans Union Credit Reporting Agency*, 862 F.

3    Supp. 824, 830 n.7 (E.D.N.Y. 1994).  Second, the letter does not identify the Bank of America

4    account—or any other information on plaintiff's credit report—as fraudulent.  *See* Wallach Decl.,

5    Ex. 20.  It merely states that plaintiff is a victim of identity theft.  *Id*.  Had Experian received the

6    letter, it may have sufficed to put Experian on notice that *some* unidentified information on

7    plaintiff's credit report *might* be false.  But this would not trigger any duty under section 1681i

8    because "Congress never intended such self-initiation of investigations.  Instead, by providing

9    that the complaint would trigger the agency's obligation to investigate and make corrections,

10   Congress placed the obligation on the consumer to identify mistakes and bring them to the

11   attention of the agencies."  *Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963, 972 (W.D. Wis.

12   2004).  Indeed, even plaintiff's purported expert admits that it is not reasonable to require

13   Experian to do a fraud investigation in response to a payment history dispute merely because the

14   disputing consumer is a confirmed identity theft victim.[14]  *See* Wallach Decl., Ex. 24 at 127:21-

15   128:13.

16        Finally, plaintiff cannot identify additional, reasonable steps that Experian could have

17   undertaken which would have revealed that the account was fraudulent.  *See, e.g., Perez*, 526 F.

18   Supp. 2d at 509.  Thus, he cannot claim that Experian's failure to take such steps caused him any

19   harm.

20        **C.  Plaintiff's parallel CCRAA claims are barred.**

21        Plaintiff's CCRAA claims are duplicative of his FCRA claims, and therefore fail for all

22   the same reasons.[15]  *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003) (FCRA

23   ───────────────
     [14] Plaintiff also erroneously suggests that Experian must have received notice that he was
24   a victim of identity theft, because he allegedly informed Trans Union of the identity theft in 2004.
     This argument assumes that Trans Union transmits the details of any dispute it receives to
25   Experian.  This is false.  While Experian was informed that plaintiff had disputed the Bank of
     America account with Trans Union in March 2004, it was not informed of the basis for that
     dispute, and certainly was not informed that plaintiff was a victim of identity theft.  *See* Hughes
26   Decl. ¶ 16.  Nor was Experian given any indication that plaintiff's dispute with Trans Union was
     found to be valid.  *Id*.

27        [15] *Compare* 15 U.S.C. § 1681e(b) *with* Cal Civ. Code § 1785.14(b); *compare* 15 U.S.C. §
     1681i *with* Cal Civ. Code § 1785.16(a)-(j); *compare* 15 U.S.C. § 1681c-2 *with* Cal Civ. Code §
28   1785.16(k)-(l), *and* Cal Civ. Code § 1785.16.1.

1  decisions are used to interpret the CCRAA because the latter is based on the former).  In addition,

2  they are statutorily barred by California Civil Code Section 1785.34, which provides that "[a]ny

3  consumer credit reporting agency . . . against whom an action brought pursuant to [the FCRA] is

4  pending shall not be subject to suit for the same act or omission under [the CCRAA]."

5  **D.  <u>Plaintiff's misrepresentation claim also fails.</u>**

6  Plaintiff purports to state a claim against Experian for "misrepresentation" based on the

7  allegation that, during a phone conversation, an unnamed Experian employee represented that he

8  or she would take some unspecified "action," but that this employee allegedly had no intention to

9  take the "action."  *See* CFAC, ¶ 315.  This claim fails, *inter alia*, because there is no evidence that

10  plaintiff ever spoke to an Experian employee on the phone, or of the content of any such

11  conversation.  Plaintiff has no memory of a conversation with Experian, and Experian has no

12  record of it.  *See* Wallach Decl., Ex. 21 at 133:1-3; Ex. 23 at 123:21-124:5.  Moreover, if plaintiff

13  could show that an Experian employee promised to take some action, he still cannot produce

14  evidence to show that the anonymous Experian employee had no intention of taking whatever

15  action it was that he promised to take.  *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 157

16  (1996) ("to support a claim of fraud based upon the alleged failure to perform a promise, it must

17  be shown that the promisor did not intend to perform at the time the promise was made.").

18  **E.  <u>Plaintiff cannot show any actual damages arising from conduct of Experian.</u>**

19  The foregoing shows that plaintiff cannot present evidence sufficient to support a finding

20  that Experian violated the FCRA, CCRAA or California tort law.  However, if plaintiff could

21  show a violation, he cannot establish any damages.

22  Plaintiff's primary claim for damage consists of the emotional distress caused by the theft

23  of his identity in 2003 by one of his care-givers while he was a patient at the SCCA, and his

24  resulting fear that the imposter intended to murder him in order to prevent detection.  *See* Wallach

25  Decl., Ex. 21 at 141:25-144:14, 216:9-218:8.  However, as shown above, Experian did not cause

26  the identity theft, because the theft had occurred before First USA viewed plaintiff's Experian

27  credit report.  *Supra* at 17.  Nor can plaintiff claim that he suffered any emotional distress

28  specifically as a result of the First USA account.  Plaintiff was never asked to pay any charges to

1   the account, it was closed less than a week after plaintiff learned that it existed, and it was

2   removed from plaintiff's credit reports within a month.  *Id.*, Ex. 21 at 37:22-38:4, 87:12-88:1;

3   Ex. 27.

4          Plaintiff also seeks to recover for his failure to obtain two mortgages in June and

5   September of 2005, respectively.  However, plaintiff never applied for these mortgages.  *Supra* at

6   22.  Instead, he claims that he was dissuaded from applying because the fraudulent Bank of

7   America account on his Experian credit report brought his median credit score to below 720.

8   This claim fails for two reasons.  **First**, plaintiff has no evidence that his Experian credit score

9   was the median score, or that it was below 720.  *See* Wallach Decl., Ex. 25 at 35:15-16.  Rather,

10  all the evidence in the record indicates that it was above 720.  *Id.*, Ex. 17 at PID 402 & Ex. 18 at

11  PID 426.  **Second**, plaintiff cannot prove that the mortgages would have been denied had he

12  applied for them, or that, if they had been denied, it would have been a result of his credit score

13  rather than his low income or lack of employment.  Nor can he prove that, had he received the

14  mortgage that he sought, he would have been able to purchase the house.  Indeed, plaintiff never

15  even made an offer on the house.  *Id.*, Ex. 21 at 59:12-14; Ex. 23 at 97:24:-98:6.  Courts routinely

16  dismiss these types of "lost opportunity" damage theories as too speculative.  *See, e.g., Casella v.*

17  *Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (plaintiff's claim that he was

18  dissuaded from applying for mortgage due to false negative items on his credit report was too

19  speculative because he did not "actually make an offer to purchase a home, or apply for a

20  mortgage."); *Tinsley v. TRW Inc.*, 879 F. Supp. 550, 552 (D. Md. 1995) (granting summary

21  judgment where "Plaintiff claims that erroneous entries on his credit report prevented him from

22  investing in distressed real property, [but] he identifies no instance in which he bid on or sought

23  financing for a property and was rejected."); *Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582,

24  2006 WL 2850499, at *12 (S.D. Ohio Sept. 29, 2006) (rejecting claim based on plaintiff's

25  "speculation that he would have been unable to obtain credit had he sought it.").

26         Nor can plaintiff claim emotional distress from the mere fact that the Bank of America

27  account appeared on his credit report in the summer of 2005.  Anger at inaccurate items appearing

28  on a credit report is too vague to constitute actual damages under the FCRA.  *Cousin v. Trans*

1  *Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001).  Moreover, "unsupported self-serving testimony

2  by a plaintiff is not sufficient" to establish emotional distress under the FCRA.  *Costa v. Nat'l*

3  *Action Fin. Servs.*, No. CIV. S-05-2084 FCD/KJM, 2007 WL 4526510, at *7 (E.D. Cal. Dec. 19,

4  2007); *Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002) ("[A] plaintiff

5  must support a claim for damages based on emotional distress with something more than his or

6  her own conclusory allegations.").  Here, plaintiff has nothing to corroborate his testimony that

7  the Bank of America account caused him emotional distress in the summer of 2005.  In all the

8  notes of plaintiff's five psychiatrists, psychologists, and social workers, there is no mention

9  whatsoever of the Bank of America account specifically, or of emotional distress caused by his

10  Experian credit report generally.  Moreover, plaintiff did not personally expend any effort to get

11  the Bank of America account removed.  Instead, he hired a credit repair clinic (Credit Line

12  Financial) and an attorney to do it for him with the money paid to him for this purpose by the

13  imposter and his settlement with the SCCA.  *Supra* at 7, 9-10.

14      **F.  <u>Plaintiff is not entitled punitive damages.</u>**

15      Punitive damages are available only upon a showing that a defendant "willfully" failed to

16  comply with a requirement imposed by the FCRA.  15 U.S.C. § 1681n.  To satisfy this

17  requirement, plaintiff must show that Experian intentionally harmed him, or that its procedures

18  were so objectively unreasonable that they show a conscious disregard by the defendant for

19  consumers' rights.  *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201, 2204 (2007); *Phillips v.*

20  *Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002); *Pace v. Experian Info. Solutions Inc.*, No. Civ. A.

21  2:03-CV-45, 2004 WL 1057795, at *3 (E.D. Tex. Apr. 28, 2004); *Jordan v. Equifax Info. Servs.,*

22  *LLC*, 410 F. Supp. 2d 1349, 1354 (N.D. Ga. 2006).

23      Plaintiff cannot satisfy this standard.  On the contrary, each time that he contacted

24  Experian, Experian did precisely what plaintiff asked.  When plaintiff requested a fraud alert,

25  Experian placed one on his credit file the next day and sent him a free copy of his credit report.

26  *Supra* at 8.  When plaintiff—through his agent, CLF—twice asked Experian to investigate

27  whether the Bank of America account had been paid delinquently, Experian promptly initiated

28  investigations, correctly determined that the account had been delinquent, and notified plaintiff of

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

1   its determination.  *Supra* at 9.  Finally, when plaintiff's attorney informed Experian that he was a

2   victim of identity theft and requested that Experian delete certain items from his credit report,

3   Experian deleted all of the items that he identified, and sent plaintiff a free updated credit report.

4   *See supra* at 10.

5          Plaintiff erroneously claims that Experian should not have allowed First USA to view his

6   credit report in December 2003.  *See supra* 14-17.  However, he does not contend, and cannot

7   prove, that Experian knew that First USA intended to use the report in connection with a

8   transaction initiated by an imposter.  Thus, he cannot show that Experian willfully provided that

9   report for an impermissible purpose.

10         In short, plaintiff has no evidence that Experian  "knowingly and intentionally committed

11   an act in conscious disregard" of his rights, and therefore he has no claim for punitive damages.

12   *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1085 (9th Cir. 2006), *rev'd on other*

13   *grounds by Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007).

14         **G.  <u>Plaintiff is not entitled to injunctive relief</u>.**

15         Plaintiff purports to state a claim for injunctive relief under section 1785.31(b) of the

16   California Civil Code.  As shown above (p. 20-21), this claim is blocked by section 1785.34.  In

17   addition, plaintiff does not have standing to seek injunctive relief because he faces no real and

18   immediate threat of future harm.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

19   *Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of

20   relief sought.");  *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000) ("In the case of

21   complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that

22   the plaintiff faces a threat of ongoing or future harm.").  All of the information that plaintiff has

23   requested Experian to delete from his credit reports was deleted on October 11, 2005, five days

24   after plaintiff first notified Experian that he was a victim of identity theft.  *See supra* at 10.

25   Moreover, plaintiff does not allege, and cannot prove, that he will have his identity stolen again,

26   or that information resulting from a second theft of his identity will appear on his Experian credit

27   report.  Thus, he faces no threat of similar future harm sufficient to confer standing to seek

28   injunctive relief.

EXPERIAN'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-00726 SI

1  **IV.   <u>CONCLUSION</u>.**

2        For the foregoing reasons, Experian's motion for summary judgment should be granted.

3

4  Dated: May 23, 2008                    Respectfully submitted,

5                                          Jones Day

6

7                                          By: /s/ David L. Wallach

8                                              David L. Wallach

                                            Counsel for Defendant
9

10
   SFI-582625v4
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28