1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC R. DREW,                                          No. C 07-0726 SI

        Plaintiff,                                  **ORDER RE: DEFENDANTS' MOTIONS
                                                        FOR SUMMARY JUDGMENT**

  v.

EQUIFAX INFORMATION
SERVICES, LLC *et al.*,

        Defendants.
_____/

      Presently pending before the Court are defendants' motions for summary judgment.  Having

considered the arguments of the parties and the papers submitted, and for good cause shown, the Court

rules as follows.

**BACKGROUND**

      Plaintiff is a cancer patient whose identity was stolen while he was undergoing treatment in

Seattle in late 2003.  The instant case arises from fraudulent credit accounts opened by the identity thief.

Plaintiff has named the following defendants: Chase Bank USA, N.A. ("Chase"), successor-in-interest

to defendants First USA Bank, N.A. and Bank One Cardmember Services; FIA Card Services, N.A

("FIA"), successor-in-interest to defendants Bank of America, N.A. and Fleet Credit Card Services;

Citigroup, Inc.; Citibank (South Dakota) N.A. ("Citibank"); Equifax Information Services, LLC

("Equifax"); and Experian Information Solutions, Inc. ("Experian").

      Plaintiff arrived in Seattle for cancer treatment on September 9, 2003.  Shortly after that date,

defendant banks began issuing fraudulent credit cards to the identity thief in plaintiff's name.  Citibank

issued a card on October 21, 2003.  *See* Decl. of Marion Pelletier in Supp. of Mot. for Summ. J. by Def.

Citibank ("Pelletier Decl.") ¶ 15.  Chase issued a Chase card on November 12, 2003, and a Bank One/First USA card on November 28, 2003.  *See* Decl. of Robert Perry in Support of Mot. for Summ. J. by Def. Chase ("Perry Decl.") ¶¶ 6, 28.  FIA issued a Fleet/Bank of America card on January 6, 2004. *See* Decl. of Jason Levine in Supp. of Mot. for Summ. J. by Def. FIA ("Levine Decl.") ¶ 12.  Plaintiff filed an identity theft police report with the Los Gatos, California police department on December 18, 2003.  *See* Decl. of John Keating in Support of Opp. to Defs. Mots for Summ. J. ("Keating Decl."), ex. A at PID 658.  Five days later, on December 23, plaintiff began treatment for a bone marrow transplant. *See* Decl. of Eric Drew in Supp. of Opp. to Defs. Mots. for Summ. J. ("Drew Decl.") ¶ 6.  The identity thief, an employee at the hospital where plaintiff was being treated for cancer, was arrested on March 2, 2004 and was eventually convicted.  *See* Decl. of David Wallach in Support of Mot. for Summ. J. by Def. Experian ("Wallach Decl."), ex. 7.

Plaintiff informed Chase by telephone on November 21, 2003 that he did not open the Chase account and informed Chase by telephone on January 27, 2004 that the Bank One account was fraudulent. Plaintiff contacted Citibank by telephone on January 21, 2004.  Plaintiff informed FIA about the fraudulent Fleet account by telephone on April 21, 2004 and by mail on July 10, 2004.  *See* Levine Decl. ¶ 11; ex. A at FIA 0016.

Plaintiff also contacted the credit reporting agencies ("CRAs") that reported the fraudulent accounts as belonging to plaintiff.  On January 20, 2004, plaintiff contacted Equifax's Automated Fraud Line and requested that Equifax add a 90-day fraud alert to his credit file.  *See* Decl. of Tina Sapere in Supp. of Def. Equifax's Mot. for Summ. J. ("Sapere Decl.") ¶17(e).  On the same day, plaintiff contacted Experian to request a fraud alert on his credit report.  *See* Decl. of Kimberly Hughes in Supp. of Def. Experian Mot. for Summ. J. ("Hughes Decl.") ¶ 12.

The fraudulent Citibank account was closed by January 10, 2004.  *See* Pelletier Decl. ¶ 21.  FIA closed the fraudulent account on July 28, 2004.  *See* Levine Decl., Ex. A, FIA 007).  The Chase account was closed by December, 2003.  *See* Perry Decl. ¶ 9.  It is not clear when the Bank One/First USA account was closed.  *See* Perry Decl.  When plaintiff subsequently ordered credit reports, he determined that they contained information stemming from the identity theft and that the reports might negatively affect his credit.  The instant dispute arises from plaintiff's contentions that his attempts to convince (1)

2

the banks to stop reporting and making inquiries about the fraudulent accounts and (2) the CRAs to stop including the fraudulent accounts on plaintiff's credit reports were largely thwarted for the next two years.

Plaintiff filed this action in San Francisco County Superior Court on December 18, 2006 against the CRAs, Experian and Equifax, that reported fraudulent accounts opened by the identity thief, as well as against the banks that issued credit to the identity thief: Chase, FIA, and Citibank. Plaintiff also sued Citigroup, Inc., the parent company of Citibank. Defendants removed to this Court on February 5, 2007. Plaintiff contends that defendants did not take reasonable measures to prevent and correct the fraudulent accounts created by the identity thief. In particular, plaintiff claims that defendants violated the Fair Credit Reporting Act, the Consumer Credit Reporting Agencies Act, and the Song-Berly Credit Card Act, in addition to committing negligence and fraud. Now before the Court are defendants' motions for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

United States District Court
For the Northern District of California

of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).  The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e).

# DISCUSSION

## 1.    Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, regulates the way consumer information is handled by CRAs and by credit furnishers (such as banks) that provide information to CRAs.

### A.    Statute of limitations

FCRA claims must be brought no more than "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p(1).  Plaintiff filed this action in superior court on December 18, 2006.  Thus, if plaintiff discovered an FCRA violation before December 18, 2004, his claim arising from that violation will be barred by the statute of limitations, absent a tolling provision.

Plaintiff contends that the statute of limitations should be equitably tolled because plaintiff was "medically unable until January 2005 to make or receive phone calls or otherwise investigate or learn of or respond to" the purported violations. Pl. Am. Opp., at 59.  In the Ninth Circuit, the doctrine of equitable tolling operates as follows:

> Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period.  The doctrine applies in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim, or where the party invoking the doctrine has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  The doctrine is not available to avoid the consequence of one's own negligence, when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights.

*Hensley v. United States*, 531 F.3d 1052, 1057-58 (9th Cir. 2008) (internal citations omitted).  The plaintiff must show that he could not "obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant". *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (en banc) (citation omitted).  In the Ninth Circuit, equitable tolling may apply if the plaintiff is mentally incompetent. *See Brockamp v. United States*, 67 F.3d 260, 263 (9th Cir. 1995), rev'd on

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

other grounds, 519 U.S. 347 (1997).  When a statute of limitations is tolled, the days during a tolled period  are not counted against the limitations period.  *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1195 (9th Cir. 2001) (en banc).[1]  That is, the clock is stopped until a later event permits it to resume running. *Id.*

In this case, drawing all inferences from plaintiff's declaration [Docket No. 226] in his favor, a trier of fact could conclude that plaintiff was rendered mentally incompetent for at least some of 2004 by the cancer treatment following his bone marrow transplant.  The Court does not, however, credit plaintiff's conclusory statement that "from late Fall 2003 through early January 2005" he was "mentally and psychologically incapable of focusing on long-term implications" of the CRAs' and banks' reporting of the fraudulent account, Drew Decl. ¶ 31, because it flatly contradicts other undisputed evidence in plaintiff's declaration.  In spring of 2004, plaintiff was represented by lawyer Gregory Ursich in his settlement agreement with the hospital that employed the identity thief.  *See id.* ¶¶ 22-24. Furthermore, notwithstanding his medical condition, plaintiff "repeatedly" contacted all of the defendants in early 2004 to advise them that he was a victim of identity theft, *id.* ¶ 16, responded in the spring of 2004 to statements and phone calls regarding past due amounts on the fraudulent accounts, *id.* ¶ 21, and called FIA at "various times" from April to July of 2004, *id.* ¶ 24.[2]  In light of the fact that plaintiff had advice of counsel regarding the hospital settlement and plaintiff's own representations that he was able to contact all defendants about the fraudulent accounts, the Court finds that no rational fact finder could conclude that plaintiff was mentally incompetent for *all* of 2004.  There is a triable issue, however, as to whether the statute should be equitably tolled for some period of less than twelve months because plaintiff's cancer treatment rendered him temporarily mentally incompetent.

This factual dispute is relevant to some of plaintiff's claims under FCRA.  As the following discussion will demonstrate, some claims must be sent to a jury to determine, *inter alia*, whether plaintiff was mentally incompetent during 2004, and if so, for how long.  This factual inquiry does not

---

[1]  In *Socop-Gonzalez*, the Ninth Circuit expressly disapproved of a rule in the Seventh Circuit that if a plaintiff gathers the necessary information after the claim arose but before the statute of limitations has run, the court should not apply equitable tolling if the court " believes that the plaintiff reasonably could have been expected to bring a claim within the remainder of the limitations period." 727 F.3d at 1194 (discussing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990)).

[2]  In addition, by October 7, 2005, plaintiff's counsel in the instant case was representing plaintiff in his dispute with Experian.  *See* Pl. Am. Opp., at 11; *see also* Keating Decl., at ex. A, PID 79.

affect other FCRA claims because plaintiff either discovered the violation within the statutory period, or because the claims fail irrespective of the statute of limitations issue.

**B.      FCRA claims against CRAs**

Plaintiff alleges that Experian and Equifax violated the following provisions of the FCRA: 15 U.S.C. §§ 1681e(b), 1681i, 1681b(a), and 1681g.  Defendants Experian and Equifax move for summary judgment on all claims.

**i.      Section 1681i**

Section 1681i provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information.

*See* 15 U.S.C. § 1681i.

**Experian**

Plaintiff contends that Experian violated § 1681i by failing to conduct a reasonable investigation after plaintiff contacted the company on January 20, 2004.  Plaintiff stated in an interrogatory response that he made "multiple telephone calls in January 2004 through January 2005 regarding inaccuracies in the credit reports he received."  Keating Decl, ex. H, 18:22-23.  According to plaintiff, he told Experian in January 2004 that the company had "no right to put [a] fraudulent address on [plaintiff's] credit report," but that the company "responded that they would not assist" plaintiff with correcting the fraudulent address.  *Id.* 18-24-19:23.  Plaintiff was therefore aware of Experian's failure to conduct a reasonable investigation as of January, 2004; any claims arising from his January 2004 contact with Experian is barred by the statute of limitations, which expired on January 20, 2006, almost a year before plaintiff filed suit.  As discussed above, if equitable tolling applies, it would extend the statute of limitations for some period of less than a year.  It is therefore unlikely that the statute would be tolled for long enough to save plaintiff's claim.  The Court need not decide this issue, however, because this claim would fail even if were not barred by the statute of limitations.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff contends that he contacted Experian on January 20, 2004 and informed the company

2 of the "identity theft status" of the fraudulent accounts. *See* Pl. Opp., at 4. Experian confirms that the

3 company received a voice mail from plaintiff on January 20, 2004. *See* Hughes Decl. ¶¶ 12-14.

4 Experian claims, however, that according to its records, plaintiff requested only that an "initial fraud

5 alert" be put on his credit report, but that he neither informed the company that any information in his

6 report was fraudulent or inaccurate nor requested that Experian delete or reinvestigate any information

7 in the report. *See id*; *see also id.*, ex. 1 at EXP 124 (January 21, 2004 letter from Experian[3]).

8    Plaintiff does not cite admissible evidence in support of his claim that he disputed the accuracy

9 of specific accounts on his credit report when he contacted Experian on January 20. First, plaintiff cites

10 a CD that purports to contain a news report. Drew Decl., ex. A. The news reporter's statement that

11 plaintiff contacted the CRAs is inadmissible hearsay and cannot be considered in support of plaintiff's

12 motion. *See* Fed. R. Evid. 801; Fed. R. Civ. P. 56(e). Second, plaintiff cites his responses to

13 interrogatories propounded by Experian. Plaintiff claimed in an interrogatory response that "In January

14 2004 after [he] got a credit report, he became furious and complained that accounts had been issued and

15 that the fraudulent address was still on his credit file records." *See* Keating Decl, ex. H, 18:23-26. This

16 claim contradicts plaintiff's deposition testimony that he had no specific recollection of the phone call.

17 *See* Wallach Decl., ex. 34, Tr. 123:21-24. The Court finds that plaintiff's self-serving interrogatory

18 response that conflicts with his deposition testimony does not create a factual dispute on this issue. *See*

19 *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to

20 find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving'

21 testimony.") (citations omitted). Plaintiff cites no evidence that it was unreasonable for Experian to

22 respond to plaintiff's telephone call by complying with his request to place a 90-day fraud alert on the

23 account.

24

_____

25    [3] The letter directed plaintiff to contact Experian if he noticed any information that appeared on
his report as a result of fraudulent activity. Its also described the effect of a temporary fraud alert:

26

27    We have added a temporary fraud security alert to your personal credit report as
requested on your behalf by one or more of the national credit reporting agencies. This
message, which will remain for 90 days, alerts credit grantors to verify your
identification in case someone is using your information without consent.

28

Plaintiff also claims that he disputed the accuracy of the information on his Experian account through an April 5, 2004 letter from the FBI to Experian. *See* Keating Decl., ex. A, at PID 633. Even if plaintiff's claim related to this document were not statutorily barred, this document (which defendants contend is inadmissible hearsay) would not support plaintiff's claim because plaintiff does not cite evidence that Experian ever received the letter and the letter itself does not challenge the accuracy of specific information on plaintiff's Experian credit report.

Finally, plaintiff contends that he contacted Experian through a credit repair company, Credit Line Financial ("CLF"), on April 6 and July 19, 2005. At that time, Experian was reporting the fraudulent Bank of America account as "closed with a prior 120-day delinquency." Hughes Decl., ex. 2 at Exp. 151. According to Experian's records, on April 6 and July 19, CLF told Experian that the Bank of America account had consistently been paid on time, not that the account was fraudulent. Hughes Decl. ¶ 17. Experian's investigation revealed that the account had not been paid on time, so Experian did not change that information on the account. Hughes Decl. ¶ 19. Plaintiff cites no evidence that CLF reported that the Bank of America account was fraudulent.[4]

The Court finds that there is no factual dispute as to whether Experian conducted an unreasonable investigation after plaintiff disputed the accuracy of any item of information in his Experian credit report. Accordingly, Experian's motion for summary judgment on this issue is GRANTED.

**Equifax**

The Court finds that there are disputed facts as to whether Equifax conducted a reasonable investigation in response to requests from plaintiff. For example, plaintiff contacted Equifax by e-mail on April 7, 2005 and "disputed the Bank of America fraud account." Pl. Am. Opp., at 9. According to Equifax, plaintiff did not state that the account was the result of identity theft; he disputed the "current and previous account status." Sapere Decl. ¶ 29. Equifax sent plaintiff the results of its investigation

---

[4] Plaintiff contacted Experian through his attorney on October 6, 2005 and disputed the Bank of America account as fraudulent. Hughes Decl. ¶ 23. Experian deleted the information disputed by plaintiff by October 11, 2005. *See id.*, ex. 7. Plaintiff does not argue that Experian's investigation in October of 2005 was unreasonable.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

on May 11, 2005. *Id.* ¶ 29.  In a credit report dated May 11, 2005, Equifax reported the Bank of America account as paid and closed in July, 2004 and 90-119 days past due as of February, 2005. *See* Perry Decl., ex. H at PID 207.  Irrespective of whether plaintiff disputed the entire account or just the payment history, a rational factfinder could conclude that Equifax's investigation was unreasonable because it resulted in an account being reported as both closed and paid, but overdue after the date it was closed.

Accordingly, the Court DENIES Equifax's motion for summary judgment on this claim.

### ii.       Section 1681e(b)

Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).  A "consumer report" is defined as follows:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for –
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

### Experian

Plaintiff contends that Experian violated § 1681e(b) by failing to timely correct the following information on his credit report after receiving notice that the information was false: (1) the address at Martin Luther King Way in Seattle, Washington; (2) the fraudulent Chase account; and (3) the fraudulent Bank of America account.  Experian provided a consumer report to First USA bank with the false Seattle address on November 28 and December 1, 2003.  Hughes Decl. ¶ 9.  The report contained the correct information for plaintiff's name, social security number, and date of birth. *See* Wallach Decl., ex. 5 at CH 43.  As discussed above, plaintiff was aware of the inaccurate address on his report

by January, 2004.  His claim under § 1681e(b) for incorrect reporting of the address is therefore likely

barred by the statute of limitations.

Moreover, plaintiff's claim would fail even if it were not barred by the statute of limitations.

At the time Experian provided the false Seattle address to First USA, both Citibank and Chase had

reported that address to Experian, Hughes Decl. ¶¶ 7, 8, and plaintiff had not yet reported the identity

theft to Experian.  Plaintiff cites no evidence that it was unreasonable for Experian to provide a credit

report with an address that had been reported to Experian by two banks.

Accordingly, the Court GRANTS Experian's motion for summary judgment on this claim.


**Equifax**

Equifax provided a consumer report to Citibank (for an AT&T Universal credit card) on October

17, 2003.  Hughes Decl. ¶ 9; Wallach Decl., ex. 1 at PID 629; ex. 2 at EIS 32-34.  Plaintiff does not

contend that any information in the report provided by Equifax was inaccurate.  *See* Wallach Decl., ex.

2 at EIS 32-34.  Plaintiff does not cite other admissible evidence of consumer reports provided by

Equifax.[5]  The Court therefore GRANTS Equifax's motion for summary judgment on this claim.


**iii.      Section 1681b(a)**

Section 1681b(a) limits the circumstances under which CRAs may furnish credit reports.  In

particular, it states that CRAs may provide credit reports to a bank "which [the CRA] has reason to

believe . . . intends to use the information in connection with a credit transaction involving the consumer

on whom the information is to be furnished."  15 U.S.C. § 1681b(a)(3)(A).  Plaintiff provides no

---

[5] Plaintiff cites a document that purports to be a credit report from Old Republic Credit Services dated January 21, 2005.  *See* Keating Decl., ex. A at PID 401.  Plaintiff appears to rely on this document to prove that on that date, Chase was reporting the fraudulent account to Equifax and Experian, which were in turn providing the inaccurate information in consumer reports on plaintiff.  Defendants object that this document is inadmissible because it contains hearsay and is unauthenticated. "[U]nauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  "A document can be authenticated under Rule 901(b)(1) by a witness who wrote it, signed it, used it, or saw others do so." *Id.* at 774 n.8. (citation omitted).  If a party authenticates a document through personal knowledge, he must attach an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. *Id.* at 774.  Plaintiff provides no such affidavit here.  The Court therefore finds that this document is unauthenticated and cannot be considered in support of plaintiff's opposition.

evidence that the CRAs did not have reason to believe that the banks intended to use the credit report in connection with a transaction with plaintiff. Accordingly, the Court GRANTS the motions of Equifax and Experian for summary judgment on this claim.

### iv. Section 1681g

Section 1681g provides that CRAs must disclose a credit report to the consumer upon request. Plaintiff provides no evidence that CRAs failed to provide a requested report. Accordingly, the Court GRANTS the motions of Equifax and Experian for summary judgment on this claim.

### C. FCRA claims against banks

FIA and Chase move for summary judgment on plaintiff's FCRA claims. Title 15 U.S.C. § 1681s-2(b) provides the only private right of action available against furnishers of credit information, such as banks.[6] *See Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir. 2002). It requires banks, upon notice from a reporting agency of a dispute as to information provided by the bank, to take certain steps to investigate the disputed information, and correct the information if necessary. The complete text of section 1681s-2(b) is as follows:

> (b) Duties of furnishers of information [banks] upon notice of dispute.
> (1) In general. After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a [bank] to a consumer reporting agency, the [bank] shall
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [bank] furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
> (i) modify that item of information;
> (ii) delete that item of information; or

---

[6] For present purposes, the only "furnishers of credit information" involved are banks. Hence, for ease of reference the word "banks" is substituted for "furnishers of credit information" in the relevant passages and statutes.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

(iii) permanently block the reporting of that item of information.
(2) Deadline. A [bank] shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the [bank] to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 U.S.C. § 1681i(a)(1) – 30 days] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

15 U.S.C. § 1681s-2(b).  The bank's investigation pursuant to § 1681s-2(b)(1)(A) must be reasonable. *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1017 (9th Cir. 2009).

### Chase

Chase contends that it is entitled to summary judgment on plaintiff's § 1681s-2(b)(1)(A) claim because it never received notice from a CRA that plaintiff disputed the Chase or Bank One/First USA accounts, and therefore Chase's duties under § 1681s-2(b)(1) were never triggered.  The Court disagrees. TransUnion, a CRA, notified Chase by letter on January 22, 2004 that TransUnion had deleted the Chase account because TransUnion presumed it to be fraudulent.[7] *See* Perry Decl. ¶ 11; ex. D. On the same day, TransUnion sent a second letter to Chase with a similar message about the Bank One/First USA account.[8]  Keating Decl., ex. A at CH 121.  Thus, Chase received notice of a customer dispute for the purposes of § 1681s-2(b)(1).

---

[7] At oral argument, Chase argued that the TransUnion letter does not constitute a "customer dispute notification."  The Court disagrees.  In order for a CRA's obligations under the FCRA to be triggered, the CRA must receive notice pursuant to 15 U.S.C. § 1681i(a)(2).  *See* 15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2)(A) provides that once a CRA is notified by a consumer of a dispute about the accuracy of information in a credit report, the CRA "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."  The Court finds that January 22 letter from TransUnion to Chase stating that TransUnion had determined that the Chase account was fraudulent constitutes notification of a dispute within the meaning of § 1681i(a)(2).

[8] Defendants contend that this document is unauthenticated and is inadmissible hearsay.  As noted above, unauthenticated documents cannot be considered in a motion for summary judgment. See *Orr*, 285 F.3d at 773.  Documents produced by a party in discovery may be deemed authentic when offered by the party-opponent. *See id.* at 777 n.20 (citation omitted). Here, plaintiff's counsel attempts to authenticate this document by stating in a declaration that it was produced by Chase. *See* Keating Decl. ¶ 4.  The Court finds this evidence that the letter was produced by a party in this action to be sufficient to authenticate the document.  In addition, the Court finds that the letter is not hearsay if offered not for its truth but to prove notice, i.e. that on January 22, Chase received notice from TransUnion that the CRA believed the account to be fraudulent.  Accordingly, defendants' objection is overruled.

Chase also contends that there is no triable issue as to whether its investigation of the dispute notice was reasonable. The Court disagrees. "[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." *Gorman*, 552 F.3d at 1019 (citation omitted). Here, in light of evidence that Chase continued to report and make inquiries about the fraudulent account, and that in October of 2005 Chase sent correspondence to plaintiff at the fraudster's address, a rational factfinder could determine that Chase failed to conduct a reasonable investigation.

Finally, Chase argues that plaintiff's claim under the FCRA for Chase's purported failure to conduct a reasonable investigation of these reports is barred by the statute of limitations. The Court disagrees. The statute of limitations runs from the date the plaintiff discovers "the violation that is the basis for such liability." *See* 15 U.S.C. § 1681p(1). Chase defines "the violation" as Chase's reporting of a fraudulent account, which plaintiff was aware of in January of 2004. The Court disagrees: "the violation" of § 1681s-2(b)(1) is Chase's failure to conduct a reasonable investigation. Here, there are disputed facts as to when plaintiff discovered that Chase's investigation was unreasonable. For example, plaintiff cites evidence that he did not discover until 2005 that Chase was continuing to make inquiries about the fraudulent account. The Court therefore cannot find as a matter of law that plaintiff's claims are barred by the statute of limitations.

Accordingly, Chase's motion for summary judgment on this claim is DENIED.

## **FIA**

It is undisputed that FIA received notice of a customer dispute from a CRA on about March 8, 2004. Yu Decl., ex. M. FIA contends that plaintiff's claim arising from FIA's investigation of the dispute notice is barred by the statute of limitations because plaintiff was aware of the purported violation by July 14, 2004. (Plaintiff concedes that he called FIA on May 3 and July 14, 2004 to dispute FIA's reporting of the fraudulent account. Pl. Am. Opp., at 18.) As discussed above, however, there is a factual dispute as to whether the statute of limitations should be equitably tolled, and if so, for how long. There is also a factual dispute as to whether FIA continued to report the fraudulent Bank of

United States District Court
For the Northern District of California

America account despite notice of the identity theft and plaintiff's medical condition.  A fact finder could conclude that this response was unreasonable.  Accordingly, the Court DENIES FIA's motion for summary judgment on this issue.

### D.        Damages under the FCRA

Defendants move for summary judgment on plaintiff's claims for damages arising from, *inter alia*, being denied a mortgage loan.  The Court finds that there are factual disputes as to whether plaintiff was refused credit and suffered economic loss as a result of fraudulent accounts being reported on his credit reports.  *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008).

Equifax and FIA also move for summary judgment on plaintiff's claim for punitive damages.  Punitive damages are only available under the FCRA for willful violations of the statute.  *See* 15 U.S.C. § 1681n(a). Willful violations of the FCRA include those violations committed with reckless disregard for FCRA duties.  *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2209 (2007).  The Court finds that a reasonable juror could conclude that the purported violations here were willful.

Finally, FIA moves for summary judgment on plaintiff's claim for emotional distress damages.  Emotional distress claims can be supported by "surrounding circumstances or other evidence of genuine injury."  *Myers v. Bennet Law Offices*, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002) (citations omitted).[9]  Here, evidence supports the inference that plaintiff experienced emotional distress as a result of the continued reporting of fraudulent accounts.

Accordingly, the motions of Equifax and FIA for summary judgment on these issues are DENIED.

### 2.        Claims against Citigroup, Inc.

Plaintiff names two Citibank defendants: Citigroup, Inc. and Citibank (South Dakota), N.A.  Citigroup, Inc. argues that it did not issue a fraudulent account to plaintiff, had no involvement with

---

[9]    FIA also argues that emotional distress claims under the FCRA should be held to a higher pleading standard, similar that required by state law for an intentional infliction of emotional distress claim.  FIA cites *Costa v. Nat'l Action Financial Serv.*, No. Civ. S-05-2084, 2007 U.S. Dist. LEXIS 93230, at *21-22 (E.D. Cal. Dec. 19, 2007), but *Costa* deals with the Fair Debt Collection Practices Act, not the FCRA.

United States District Court
For the Northern District of California

processing the fraudulent account, and is connected to this case only because it is the parent company of Citibank. Plaintiff cites no evidence of conduct by defendant Citigroup, Inc. and offers no theory of liability for Citigroup, Inc. Accordingly, the Court GRANTS Citigroup, Inc.'s motion for summary judgment on all claims.

**3.      Negligence**

> **A.      Negligence claims against banks**

Plaintiff contends that the banks were negligent in failing to properly investigate the fraudulent credit applications before issuing credit to the identity thief in plaintiff's name and failing to take reasonable measures upon learning of the identity theft. In California, the statute of limitations for tort actions is "two years" from the plaintiff's discovery of the loss or damage. *See* Cal. Civ. Pro. Code § 339(1). The statute begins to run when the plaintiff suspects he is injured, not when he discovers new facts relevant to his claim:

> [T]he statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Jolly v. Eli Lilly*, 44 Cal. 3d 1103, 1110-1111 (Cal. 1988).

Here, it is undisputed that plaintiff had discovered the fraudulent accounts by January, 2004 and that he contacted the banks to complain about their reporting of the accounts throughout 2004. *See, e.g.*, Keating Decl., ex. B at CITI 43 (Citibank account); ex. C at CH 33 (Chase); ex. A at PID 454-56 (Bank One/First USA); Levine Decl., ex. A at FIA 16 (Bank of America/Fleet account). Plaintiff therefore knew well before December 18, 2004 of the banks' purported negligence in responding to the identity theft.

Plaintiff argues that the two-year statute of limitations should be tolled because of plaintiff's medical condition. This argument fails first because plaintiff does not cite to the record in support of this argument. *See* Pl. Am. Opp., at 63. Second, California's tolling provision operates differently from the Ninth Circuit doctrine of equitable tolling. In California, the statute of limitations may be tolled if

15

the plaintiff is disabled by virtue of being "insane," *see* Cal. Code Civ. Pro. § 352, but the plaintiff's

mental disability must have existed when the right of action accrued, *see* Cal. Code Civ. Pro. § 356 ("No

person can avail himself of a disability, unless it existed when his right of action accrued."); *see also*

*Henein v. Saudi Arabian Parsons Ltd.*, 818 F.2d 1508, 1515 (9th Cir. 1987) (holding equitable tolling

did not apply to California common law cause of action because plaintiff did not allege that he was

incapacitated at the time the cause of action accrued). Here, as discussed above, plaintiff's cause of

action for negligence against the banks had accrued by January, 2004, when he discovered the

fraudulent accounts. Plaintiff does not cite evidence that he was "insane" in January, 2004. To the

contrary, the undisputed evidence is that in January, plaintiff contacted all the defendants about the

fraudulent accounts and that he had advice of counsel later in 2004. The Court therefore finds that the

California tolling rule cannot apply in to these claims.

Accordingly, the Court GRANTS the banks summary judgment on plaintiff's negligence claims.

### B.     Negligence claims against CRAs

Plaintiff claims that Experian and Equifax were negligent in failing to use reasonable care when

they issued credit reports to banks. This cause of action fails for two reasons. First, plaintiff cites no

evidence in support of his negligence claims against the CRAs and thus utterly fails to meet his burden

by citing "specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc.*, 809

F.2d at 630.

Second, Equifax and Experian argue that any negligence claim arising from provision of a credit

report to banks is barred by mutual interest privilege. Section 47(c) of the California Civil Code

provides that a privileged publication or broadcast is one made "[i]n a communication, without malice,

to a person interested therein . . . [by one] who is requested by the person interested to give the

information." Cal. Civ. Code § 47(c). The privilege applies to credit reporting agencies. *Stationers*

*Corp. v. Dun & Bradstreet, Inc.*, 62 Cal. 2d 412, 418 (Cal. 1965); *see also Batdorf v. TransUnion*, No.

C 00-0501, 2000 WL 635455, at *4 (N.D. Cal. May 8, 2000). As it is undisputed that the CRAs

provided plaintiff's information to the banks at the banks' request, plaintiff must present evidence that

the CRAs provided the information "with malice." For purposes of a statutory qualified privilege, "[t]he

16

malice referred to . . . [is] a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.  The factual issue is whether the publication was so motivated." *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 729 (Cal. Ct. App. 2008).  Plaintiff offers no argument in response to the CRAs' mutual interest defense and cites no evidence that the CRAs were motivated by malice in providing information about plaintiff to the banks.  Accordingly, the Court GRANTS Experian and Equifax's motions for summary judgment on plaintiff's negligence claims.

**4.      Fraud**

Plaintiff claims that Chase, Experian, and Equifax committed fraud by representing to plaintiff that they would resolve the identity theft matter but then failing to do so. Plaintiff, however, fails to provide any evidence of defendants' intent at the time of making the representation.  "[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Tenzer v. Superscope, Inc.* 39 Cal. 3d 18, 31 (1985).  Accordingly, the Court GRANTS defendants' motions for summary judgment on plaintiff's fraud claims.

**5.      Consumer Credit Reporting Agencies Act**

**A.      CCRAA claims against CRAs**

Plaintiff claims Experian and Equifax violated California's Consumer Credit Reporting Agencies Act the ("CCRAA"), which regulates credit reporting agencies in a manner similar to the FCRA. Plaintiff argues that the CRAs violated sections 1785.10, 1785.16(a-d), 1785.16(g), 1785.16(k-l), 1785.16.1, 1785.20.3, 1785.30, and 1785.31 of the CCRAA.  The majority of plaintiff's CCRAA claims are duplicative of his FCRA claims against Experian and Equifax and thus barred.  *See* Cal. Civ. Code § 1785.34 ("Any consumer credit reporting agency . . . against whom an action brought pursuant to Section 1681n or 1681o of Title 15 of the United States Code is pending shall not be subject to suit for the same act or omission under [the CCRAA]").  Any purported violations that are not barred as duplicative fail because plaintiff does not cite any specific evidence in support of these claims. Accordingly, the Court GRANTS the motions of Experian and Equifax for summary judgment on plaintiff's CCRAA claims.

**B.**     **CCRAA claims against banks**

Plaintiff claims that the banks violated section 1785.20.3 of the CCRAA, which requires banks to perform a reasonable investigation before extending credit when they have reason to believe the application is fraudulent.  *See* Cal. Civ. Code § 1785.20.3.

**i.**     **Section 1785.20.3(a)**

The banks move for summary judgment on plaintiff's claim under § 1785.20.3(a) of the CCRAA.  Section 1785.20.3(a) provides:

> Any person who uses a consumer credit report in connection with the approval of credit based on an application for an extension of credit, and who discovers that the consumer's first and last name, address, or social security number, on the credit application does not match, within a reasonable degree of certainty, the consumer's first and last name, address or addresses, or social security number listed, if any, on the consumer credit report, shall take reasonable steps to verify the accuracy of the consumer's first and last name, address, or social security number provided on the application to confirm that the extension of credit is not the result of identity theft, as defined in Section 1798.92.

*See* Cal. Civ. Code § 1785.20.3(a).  Any claim for a violation must be brought "within two years from the date the plaintiff knew of, or should have known of, the violation of this title . . . " *See* Cal. Civ. Code § 1785.33.[10]

**Chase and FIA**

Plaintiff does not cite evidence that there were discrepancies between the specified categories of information on the applications for the Chase or FIA credit cards and the credit reports used by those banks.  In addition, it is undisputed that plaintiff knew by January, 2004 that the banks had issued credit to the identity thief, so these claims are barred by the statute of limitations.  Accordingly, the Court GRANTS the motions of FIA and Chase for summary judgment on this issue.

**Citibank**

It is undisputed that the address on the Citibank card application did not match the address on

---

[10]   The CCRAA provides for tolling the statute of limitations only where "a defendant has materially and willfully misrepresented any information required under this chapter to be disclosed to a consumer," *see* Cal. Civ. Code § 1785.33.  Plaintiff cites no evidence that defendants misrepresented any such information.

18

United States District Court
For the Northern District of California

the credit report Citibank used. *See* Pelletier Decl. ¶ 10.[11]  It is also undisputed that Citibank issued a credit card to the identity thief after investigating the discrepancy. *Id.* at ¶¶ 10-16. Citibank contends that it is entitled to summary judgment on this issue because plaintiff's claim is barred by the statute of limitations. It is undisputed that plaintiff knew of the fraudulent account by January 21, 2004. Thus, any claims arising from Citibank's improper issuance of credit to the identity thief are barred by the statute of limitations. Accordingly, the Court GRANTS Citibank's motion for summary judgment on this issue.

### ii.      Section 1785.20.3(b)

Plaintiff fails to cite evidence that the banks violated § 1785.20.3(b) of the CCRAA. Section 1785.20.3(b) requires banks to take reasonable verification procedures if they extend credit on the basis of a credit report after receiving a police or DMV notification from a CRA that the applicant is a victim of identity theft. *See* Cal. Civ. Code § 1785.16(k). Plaintiff contends that he filed an identity theft police report on December 19, 2003. The earliest that the banks could have received the police report from a CRA, however, was after January 20, 2004, which is the earliest date plaintiff contends that a CRA gave any bank notice of the identity theft. It is undisputed that all of the fraudulent accounts were issued before January 20, 2004. The banks therefore cannot have issued credit after receiving a police report and therefore cannot have violated §1785.20.3(b). The Court therefore GRANTS summary judgment to the banks on this claim.

### 6.      Song-Beverly Credit Card Act

Plaintiff contends that FIA violated California's Song-Beverly Act by failing to correct billing errors. The Song-Beverly Act provides that "[e]very card issuer shall correct any billing error made by the card issuer within two complete billing cycles, but in no event later than 90 days, *after receiving an*

---

[11]  Plaintiff also claims that the name did not match. In fact, the name on the application was "Eric Drew" and the name provided by the CRA was "Eric R. Drew." *See id.* exs. A and C. Plaintiff cites no authority for the proposition that the omission of an initial constitutes a failure to match within a reasonable degree of certainty for purposes of the CCRAA. Plaintiff's claims about other information on the application is irrelevant because only the consumer's name, address, and social security number are regulated by the statute.

*inquiry*." Cal. Civ. Code § 1747.50 (emphasis added).  An "inquiry" is a writing posted by mail to the card issuer and must be received "no later than 60 days after the card issuer transmitted the first periodic statement that reflects the alleged billing error."  Cal. Civ. Code § 1747.02(g).

Plaintiff's claim is based on erroneous billing statements sent by FIA from February 18, 2004 to July 20, 2004.  Levine Decl., ex. A at FIA 1-7.  Plaintiff contacted FIA by mail on July 14, 2004 to dispute "all" of his statements.  *Id.* at FIA 8.  He stated in the dispute notice that the card was "totally" fraudulent.  *Id.*  On plaintiff's next billing statement (which was due September 14, 2004), FIA adjusted plaintiff's account balance to zero and refunded the charged late fees.  *Id.* at FIA 7.  Thus, it is undisputed that FIA corrected the billing error within the 90 days required by the Song-Berverly Act. Accordingly, the Court GRANTS FIA's motion for summary judgment on this issue.

## 7.    Injunctive relief

Plaintiff seeks injunctive relief.  "Injunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Systems Corp.* 130 Cal. App. 4th 440, 463 (Cal. Ct. App. 2005).  Plaintiff's claim for injunctive relief fails because he has not cited evidence of ongoing illegal conduct by any defendant.  Accordingly, the Court GRANTS defendants' motions for summary judgment on plaintiff's claim for injunctive relief.

## 8.    Evidentiary and Other Issues

Defendants have objected to much of the evidence submitted by plaintiff in support of his opposition to defendants' motions.  Except as discussed above, the Court has not used the challenged evidence for the purposes objected to by defendants.  Accordingly, defendants' objections are DENIED without prejudice.

Defendants have also moved to strike several documents submitted by plaintiff.  Plaintiff appended a thirty-page exhibit to his amended opposition that appears to be his summary of evidence in the record.  The Court agrees with defendants that this document does not constitute evidence as it appears to be counsel's summary of other documents.  Defendants' motion to strike this document is GRANTED.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   The Court has considered two cases submitted by plaintiff with notices of recent authority

2   (Docket Nos. 315, 316) but has not considered the argument submitted by plaintiff in conjunction with

3   those cases.

4   On February 27, 2009, plaintiff filed a request to submit a twenty-page appendix of citations.

5   The Court agrees with defendants that this filing comes after a lengthy delay, but the Court has found

6   this document useful as a cross-reference for locating documents in the record.  Plaintiff's administrative

7   request [Docket No. 324] is therefore GRANTED.

8

9   **CONCLUSION**

10   For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions

11   of Citibank, Inc., Citibank and Experian on all claims.[12]  The Court GRANTS the motions of Equifax,

12   FIA, and Chase on all issues except (1) plaintiff's claim for damages against Equifax under 15 U.S.C.

13   § 1681i, and (2) plaintiff's claims for damages against Chase and FIA under 15 U.S.C. § 1681s-2(b);

14   the motions of Equifax, Chase and FIA with respect to these two issues are DENIED.

15

16   **IT IS SO ORDERED.**

17

18   Dated: March 5, 2009

_____
SUSAN ILLSTON
United States District Judge

19

20

21

22

23

24

25

26

27

28

[12]  Experian's motion to compel [Docket No. 134] is DENIED as moot.