GEORGE G. WEICKHARDT (SBN 58586)
**ROPERS, MAJESKI, KOHN & BENTLEY PC**
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:   (415) 543-4800
Facsimile:   (415) 972-6301
Email:       gweickhardt@rmkb.com

Attorneys for Defendant
CHASE BANK USA, N.A., as successor-in-interest to
FIRST USA BANK, N.A. and BANK ONE
CARDMEMBER SERVICES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIC ROBERT DREW,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANSUNION LLC, NCAC, BANK OF AMERICA, FLEET CREDIT CARD SERVICE, AT&T UNIVERSAL CARD SERVICES, CITIGROUP, BANK ONE CARDMEMBER SERVICES, FIRST USA BANK, N.A. and DOES 1-100,<br><br>Defendants. | CASE NO. C07 0726 SI<br><br>**REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION RE: ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[Local Rule 7-9]<br><br>**No hearing requested**<br>**(Pretrial Conference scheduled for March 31, 2009 at 3:30 pm.** |

## I. INTRODUCTION

Pursuant to Local Rule 7-9, defendant Chase Bank USA, N.A., hereby requests leave to file a motion for reconsideration of the Court's ruling denying Chase's motion for summary judgment as to plaintiff Eric Drew's Fair Credit Reporting Act (FCRA) claim against it. Local Rule 7-9(b)(3) states that a motion for reconsideration may be made, among other grounds, (1) on a showing of new material facts or (2) that the Court failed to consider material facts or dispositive legal arguments which were presented to the Court. Both of these grounds exist here.

The Court held that letters from TransUnion dated January 22, 2004 constituted a notice under 15 U.S.C. §1681i(a)(2). With this motion Chase presents a declaration from TransUnion itself that it did not consider these letters to be the type of notice (called an "ACDV" in the industry) that would trigger a duty to investigate under §1681s-2(b), that no person with experience in the credit reporting industry would consider the letters to be an ACDV, and that both the Chase and Bank One accounts had already been deleted by TransUnion. See Declaration of TransUnion employee Sean L. Walker filed herewith.

The Court also failed to consider the following material facts and dispositive legal arguments presented with the motion.

1. the dispositive legal argument that TransUnion letters dated January 22, 2004, did not trigger the duty to investigate under 15 U.S.C. § 1681s-2(b) because they plainly do not request any investigation or even any response on the part of Chase.

2. the material facts that Chase had already investigated and closed the Chase account over a month prior to receiving the TransUnion letter, and had already reported the account as "lost/stolen" to all credit reporting agencies and did not report it at all after February, 2004.

3. the material facts that Bank One closed the Bank One/First USA account on January 27, 2004 (before it received the TransUnion letter) and requested that it be deleted by all credit reporting agencies on February 16, 2004, well within the deadlines for taking any action under § 1681s-2(b).

Thus, even if it is assumed that the TransUnion letters did trigger the duty to investigate under §1681A-2(B), which Chase denies, both Chase and Bank One performed a reasonable investigation as a matter law.

## II. THE COURT'S RULING

The Court granted summary judgment on all claims against Chase except the FCRA claim. It did so on the ground that it concluded that Chase had received a notice under 15 U.S.C. § 1681i(a)(2). The purported notice was a letter from TransUnion dated January 22, 2004, which stated that, "TransUnion presumes this account to be fraudulent, and therefore has deleted it from the consumer's TransUnion credit file." A similar letter was sent to Bank One on the same day

concerning the Bank One/First USA account. The Court also ruled that it could not find as a matter of law that Chase and Bank One had conducted a reasonable investigation upon receiving the TransUnion letters.

### III. THE COURT'S CONCLUSION IS CONTRARY TO THE UNDISPUTED EVIDENCE

That the TransUnion letter is not a §1681i(a)(2) notice (known in the trade as an ACDV (automated consumer dispute verification) was essentially admitted by plaintiff's own expert in his deposition, where he stated that he did not know of any ACDV received by Chase. Hendricks Depo. 45:9-23; 46: 9-13. Indeed, plaintiff never presented any evidence that an ACDV had been received by Chase and did not even contend that one had been received in his opposition to Chase's motion for summary judgment.

More importantly, TransUnion itself does not consider the two letters dated January 22, 2004, to be ACDVs. See Declaration of Sean L. Walker, 2:26-3:4, filed herewith. TransUnion did not expect Chase or Bank One to conduct an investigation regarding anything mentioned in the letters and did not expect a reply. Mr. Walker also states in his declaration that, based on his eleven years of experience in credit reporting, no person experienced in credit reporting would consider the January 22, 2004 letters to be an ACDV and that TransUnion had already deleted both the Chase and Bank One accounts from its records.

This declaration was not presented with the motion for summary judgment because there was never any contention by plaintiff that the TransUnion letters were §1681i(a)(2) notices (ACDVs), and, as noted above, Plaintiff's expert testified that he did not know of any ACDV's sent to Chase or Bank One. In other words, the Court's own Order was the first time the proposition that the letters were ACDVs was introduced in this case.

Thus the Court's conclusion that the January 22, 2004 TransUnion letter were §1681i(a)(2) notices is contrary to the undisputed evidence in this case.

### IV. THE COURT MISCONSTRUES THE STATUTES AT ISSUE

The Court misconstrues sections 1681s-2(b) and 1681i(a)(2), which of course must be read together. The dispositive issue is whether the TransUnion letter was a notice pursuant to 15

U.S.C. § 1681i(a)(2). Section 1681i(a)(1) provides that if a consumer reporting agency receives a dispute from a consumer about how an account is reported, it must conduct a reasonable investigation within thirty days. Section 1681i(a)(2) then provides as follows:

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer … in accordance with paragraph 1, the agency shall provide notification of the dispute to any person who provided any item of information in dispute at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

The statute is thus quite specific that all relevant information received from the consumer should be provided.

The relevant portions of section 1681s-2(b) are quoted in the Court's order in full. That provision states that upon receiving a notice pursuant to § 1681i(a)(2), the furnisher of the information shall

(a) conduct an investigation with respect to the disputed information;

(b) review all relevant information provided by the consumer reporting agency;

(c) report the results of its investigation to the consumer reporting agency;

(d) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies; and

(e) if the item is found to be inaccurate, the statute gives the furnisher three options: "(i) modify the item of information; (ii) delete the item of information; or (iii) permanently block the reporting of that item of information."

All this must be done within a certain deadline provided in § 1681s-2(b)(2), which equates to thirty days from the date on which the credit reporting agency receives a notice of dispute from the consumer.

When the two statutes are read in context with each other, the TransUnion letters simply cannot be considered a notice under § 1681i(a)(2). Each letter states that TransUnion has presumed the Chase account fraudulent and deleted it. <u>There was therefore nothing that Chase could have investigated under § 1681s-2(b)</u>. Indeed, the TransUnion letter did not request Chase

to investigate anything or take any action: it stated instead that it had already taken the requisite action, i.e., deletion. A notice under §1681i(a)(2) on the other hand, provides information to be investigated and requests and requires a response. It gives the information provided by the consumer, notifies the furnisher that the consumer disputes the way the information is being reported, and requires the furnisher to investigate the dispute and provide a response that the account is reported in correctly, or that the reporting should be modified or deleted or the account permanently blocked. The TransUnion letter, on the other hand, provides no information about the dispute other than the conclusory statement that the consumer believed that the application was fraudulent. It does not ask Chase to investigate this dispute or the information provided, but simply advises Chase that TransUnion has <u>already</u> deleted the account. Thus no response and no investigation by Chase was sought or required, and Chase was not given the option to modify, delete or block the account.

The TransUnion letters, moreover, do not state when the purported notice of dispute was received from the consumer, so there is, accordingly, no way Chase could calculate the date for a response.

In sum, the TransUnion letters simply do not have the characteristics of a §1681i(a)(2) notice, and <u>there is absolutely no case authority to support the proposition that a notice from a consumer reporting agency that it has deleted or blocked an account can serve as a trigger for §1681s-2(b) liability. It is thus not surprising that no one with experience in the credit reporting industry would consider these letters to be ACDVs.</u>

### V. IN DETERMINING WHETHER CHASE CONDUCTED A REASONABLE INVESTIGATION, THE COURT FAILED TO CONSIDER THAT AS OF THE DATE IT RECEIVED THE TRANSUNION LETTER, CHASE HAD ALREADY COMPLETED A FRAUD INVESTIGATION, CLOSED THE ACCOUNT AND REPORTED IT LOST/STOLEN

Even if the TransUnion letters were considered to be a notice complying with §1681i(a)(2), which Chase denies, the undisputed evidence was that Chase conducted a reasonable investigation. In failing to find that Chase had conducted a reasonable investigation as a matter of law, the Court failed to consider the following materials facts: that long before it received the TransUnion letter, Chase had already investigated the fraud claim, closed the

account, and reported it as lost or stolen to the credit reporting agencies.

In fact, as the Court notes in its order, "The Chase account was closed by December 2003." Order at 2:25. The account was closed after Chase conducted a fraud investigation in November and December 2003, after taking the initiative to inquire of Drew by letter as to whether he had opened the account. In response to the letter, Drew called Chase on November 21, 2003, and stated that he did not open the account. Chase immediately closed the account, before any charges had been placed on it, and conducted a fraud investigation in which it concluded that the account was fraudulently opened. Upon making this determination, it sent a copy of the application for the account to the Los Gatos Police Department. Thus, Chase had already closed the Chase account over a month before it received the TransUnion letter. It is also undisputed that it had reported the Chase account as lost or stolen to credit reporting agencies before it had received the TransUnion letter. Plaintiff's own expert confirmed that reporting an account as lost/stolen means that the account is closed, that the card issuer will not accept charges on it, the consumer is not responsible for the account, and that a "lost/stolen" account will not adversely affect the consumer's credit rating. Hendricks Depo. 41:19-43:22. "Lost/stolen" is thus not an inaccurate report of the status of the Chase account.

Thus, even if the Court is correct that the TransUnion January 22 letter was a notice of dispute within the meaning of section 1681i(a)(2), Chase had already done everything that it would be required to do if in fact its duty under section 1681s-2(b) had been triggered. *Gorman v. Wolpoff & Abramson,* 552 F.3d 1008, 1014-1019 (9th Cir. 2009) makes it clear that a furnisher does not have to repeat a previous investigation as long as the previous investigation was reasonable.

Without citing any evidence, the Order states that "Chase continued to report and make inquiries about the account." Order 13:5-6. While the Court states that it has not relied on the evidence that Chase has challenged as hearsay and unauthenticated (Order, at 20:21-23), such as the Old Republic credit reports that Chase challenged in the February 27, 2009 letter brief, copy attached, the Court necessarily relied on the Old Republic reports in stating that Chase continued to report the account because they are the only "evidence" to that effect. The latest date the

Chase account appears on a TransUnion, Equifax or Experian credit report is February 16, 2004. The only evidence that Chase reported the account after that date is the inadmissible Old Republic reports. See February 27, 2009 letter brief.

The Order is also incorrect in stating that Chase continued "to make inquiries about the account." The only inquiries that appeared on Drew's credit report were inquiries indicated on his Experian credit report that were stated to have been made in November and December, 2003, i.e., the inquiries or access made to Drew's credit report in connection with opening the account. See Exhibit G, pg. 8 to Perry Declaration filed in support to Chase's motion for summary judgment,.

The Court's order also notes that Chase inadvertently sent a letter stating that it was deleting an inquiry from Drew's credit records to the fraudster's address in October 2005. There is no evidence whatsoever that this inadvertent error caused any damage to Drew; no fraudulent credit card accounts were opened after this date. As the Court notes in its own order, all of the fraudulent credit card accounts in issue had been opened prior to the middle of January 2004. Moreover, when Chase did receive a §1681i(a)(2) notice about this inquiry, it was removed immediately from Experian's records. Sending such a letter, moreover, is not a violation of the FCRA, which deals with the way information is reported.

In sum, the Order misstates the facts as to Chase's investigation and reporting of the account, and fails to consider a large number <u>undisputed material</u> facts.

### VI. BANK ONE CLOSED THE FIRST USA/BANK ONE ACCOUNT PRIOR TO RECEIVING THE TRANSUNION LETTER AND DELETED IT FROM DREW'S CREDIT RECORDS WITHIN 25 DAYS OF THE DATE OF THE TRANSUNION LETTER

Even if the TransUnion letters are to be considered §1681i(a)(2) notices, Bank One reasonably investigated and handled Drew's fraud claim. The Order is based on numerous incorrect statements about the undisputed evidence concerning the closing and reporting of the Bank One account. The Court incorrectly states in its order that it is not clear when the Bank One/First USA account was closed. Order at 2:25-26. <u>The Perry declaration states specifically that the Bank One account was closed on January 27, 2004</u>, the same day that Drew first reported to Bank One that he did not open the account. Perry Decl., ¶ 20. This fact is undisputed. In fact,

the copy of the TransUnion letter in the Bank One file (CH121) has a received stamp indicating that it was received on January 30, 2004. Thus the TransUnion letter was received by Bank One after Bank One had already closed the Bank One/First USA account.

Moreover, it is undisputed that on February 16, 2004, Bank One instructed all of the credit reporting agencies to delete the Bank One account from Drew's credit records. Perry Decl., ¶ 22. Thus, within less than seventeen days from its receipt of the TransUnion letter (which is stamped received as of January 30, 2004), Bank One had already done everything that it could possibly do to respond to a proper notice of dispute under section 1681i(a)(2), even though it had never received such a notice. In view of these undisputed facts, the Court erred in not concluding that Bank One conducted a reasonable investigation as a matter of law.

There is no dispute that the Bank One account was deleted from Drew's credit records in February, 2004. Thus neither the Bank One nor Chase account was reported on Drew's credit report after February, 2004.

## VII. CONCLUSION

Thus, a careful reading of the FCRA indicates that the TransUnion letters were not a §1681i(a)(2) notice. Moreover, the Court's conclusion that the TransUnion letters were such a notice is contrary to the evidence in this case: no one with experience in credit reporting would consider the letters to be ACDVs. The undisputed facts, moreover, show that whether or not Chase and Bank One received a notice of dispute, they took prompt and effective action to close the two accounts and to correct Drew's credit records.

Dated: March 17, 2009

ROPERS, MAJESKI, KOHN & BENTLEY

By:_____
GEORGE G. WEICKHARDT
Attorneys for Defendant
CHASE BANK USA, N.A., as successor-in-interest to FIRST USA BANK, N.A. and BANK ONE CARDMEMBER SERVICES

SAN FRANCISCO | 201 Spear Street
Los Angeles | Suite 1000
New York | San Francisco, CA 94105-1667
Redwood City | Telephone (415) 543-4800
San Jose | Facsimile (415) 972-6301
Boston | www.rmkb.com



George G. Weickhardt
(415) 972-6370

gweickhardt@rmkb.com

February 26, 2009

**Via E-Filing and Hand Delivery**

The Honorable Susan Illston, U.S. District Judge
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    *Drew v. Equifax, et al.,*
              Action Number 07CIV0726 SI

Dear Judge Illston:

      Defendants hereby respond to the letter of plaintiff's counsel to the Court dated February 23, 2009, regarding lack of foundation for a business records exception to the hearsay objections to Exhibits A-G of the Keating Declaration submitted in Opposition to the Motion for Summary Judgment. This response will focus mainly on Exhibit A, which consists of documents produced by Drew himself, and Exhibit G, which were the documents produced by TransUnion. The defendants do not object to their own documents to the extent that they themselves submitted the documents in support of their motions for summary judgment (some of which are noted in Mr. Keating's letter), but Exhibits A and G consist of purported business records of third parties and Exhibits B through F contain numerous documents that defendants did not authenticate or use in support of their motions for summary judgment.

      The Court's order of February 9, specifically stated that plaintiff had "not cited documents in the record that establish that his exhibits meet [requirements for establishing the business records exception stated in Fed. R. Evid. 803(6)]." The February 23, 2009, letter from plaintiff's counsel identifies no such documents other than the Keating Declaration itself and an earlier declaration by plaintiff Drew. However, neither declaration purports to lay the foundation for the business records exception. Moreover, neither Mr. Keating nor Mr. Drew is a witness qualified to establish the business records exception for the third party documents in Exhibits A and G, nor defendants' own documents in Exhibits B through F. In fact, rather than complying with the Court's order to provide proper foundation for each document submitted in Exhibits A through G, plaintiff impermissibly attempts to shift his burden to defendants: "[s]hould Defendants identify how a particular use of a particular document might be hearsay Plaintiff requests the opportunity to respond." Plaintiff misses the point. Defendants have already set forth their specific evidentiary objections to each document. That plaintiff has no response to these objections is plainly obvious at this juncture.

      Among other inadmissible documents, Exhibit A includes the following third-party credit reports for which there is no authentication and no declaration of a qualified witness establishing the business records exception:

    1.    Plaintiff's documents ("PID") 305-311 (TransUnion credit report);

RC1/5263122.1/GGW



The Honorable Susan Illston, U.S. District Judge
February 26, 2009                                                                                                Page 2

    2.    Plaintiff's documents 385-417 (Old Republic credit reports dated 1/21/04, 1/21/05 & 11/16/06);

    3.    Plaintiff's documents 425-431 (a credit report from CBC Innovis dated 9/06/05);

    4.    Plaintiff's document 719 (excerpt from an Old Republic credit report);

    5.    Plaintiff's documents with bates-stamp numbers 2-18 appearing at the end of Exhibit A (Old Republic credit report dated 11/17/06).

These various credit reports were submitted by plaintiff to prove how the credit card accounts at issue were being reported to the credit reporting agencies by the defendant banks. For example, plaintiff is attempting to use the Old Republic credit report dated 1/21/05 to prove that Chase was still reporting the Chase account to Experian and Equifax, as of October 2004 (see page PID 404 and p. 22 of Plaintiff's "Amended Opposition" to the MSJ ).[1] Chase denies this contention, and, in fact, no Experian or Equifax credit report dated later than February 16, 2004 reports the Chase account. Plaintiff is also attempting to use the same report to prove that potential creditors would have seen purportedly derogatory information on the FIA account in late 2005, a contention FIA denies. (No credit reporting claims are asserted against Citibank.) The Old Republic reports are thus being offered for the truth of the matter asserted.

Exhibit G consists of documents produced by TransUnion, which is no longer a party to this action.

Plaintiff has submitted no declarations from Old Republic, TransUnion or CBC Innovis either authenticating these documents or establishing the business records exception. Plaintiff, in fact, admits in his February 23, 2009, letter to the Court that the case cited by the Court in its February 9, 2009 order, namely *Cruz v. MRC Receivables Corp.*, 563 F. Supp. 2d 1092, 1094 (N.D. Cal. 2008) holds that credit reports are inadmissible under the hearsay rule in cases where there is no declaration from the entities generating the credit reports. Plaintiff in fact cites two other cases to the same effect, *Baker v. Capital One Bank*, 2006 U.S. Dist. LEXIS 2625 (D. Az. 2006); and *Capital Funding, VI v. Chase Manhattan Bank*, 2005 U.S. Dist. LEXIS 2212 (E.D. Pa. 2005).

In *Cruz, supra*, the plaintiff offered in evidence Experian and TransUnion credit reports that he had received to prove that a certain account was not accurately reported. The only foundation provided was plaintiff's own declaration. The court noted that the plaintiff was not an employee of either the furnisher of the information or of either credit reporting agency, and that therefore there was no foundation that would support any exception to the hearsay rule. *Id.* at 1095-1096. Accordingly, under the authority that plaintiff himself has cited, neither

---

[1] The Old Republic reports thus involve a double hearsay, in that they purport to state how Equifax and Experian were reporting the accounts and how the defendant banks were reporting the accounts to Equifax and Experian.

RC1/5263122.1/GGW



The Honorable Susan Illston, U.S. District Judge
February 26, 2009                                                                                      Page 3

Mr. Keating nor Mr. Drew is qualified to authenticate or establish the business records exception for any of the credit reports issued by Old Republic, Trans Union or CBC Innovis listed above, or any other document produced by defendants that defendants themselves did not authenticate.

Plaintiff also argues that the credit reports included in Exhibit A are admissible because they "were intended to and did affect a credit-granting decision, they show the state of mind of the credit grantors as well as of plaintiff and defendant." There is, however, no evidence whatsoever submitted by plaintiff that any credit grantor ever reviewed any of the credit reports listed above.

Thus, none of the credit reports listed above may be admitted to prove how Chase, Citibank or FIA Card Services reported the accounts issued to plaintiff to any credit reporting agency, including Equifax and Experian, or that any potential credit grantor relied upon them. How the accounts were reported is a key issue in this case, and plaintiff is impermissibly attempting to offer the credit reports listed above to prove the truth of the matter asserted, namely, how the accounts in question were being reported. Mr. Keating's statement that he will provide the proper foundation for the business records exception by way of a trial witness entirely misses the point, because the issue now before the Court is whether plaintiff has produced sufficient admissible evidence to defeat summary judgment.

The defendants do not object to the Experian and Equifax credit reports submitted with the declarations of individuals employed by those parties. However, to the extent that Exhibit A through G contains credit reports from Experian or Equifax that were not submitted by defendants themselves in their respective motions for summary judgment, plaintiff still cannot establish any foundation or hearsay exception for these documents, and hence, these documents remain inadmissible.

Defendant Chase would remind the court that neither the Chase nor Bank One account appears on any Experian or Equifax report dated after February 16, 2004, which is far beyond the two year statute of limitations for any FCRA claim. Plaintiff's most recent failure to establish the proper evidentiary foundation for Exhibits A through G simply underscores again the dispositive flaw permeating plaintiff's voluminous Opposition: Plaintiff has no admissible evidence to sustain any claim against any defendant.

Very truly yours,

George G. Weickhardt
FOR ALL DEFENDANTS

GGW/acb

RC1/5263122.1/GGW