IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC R. DREW,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC *et al.*,<br><br>　　　　　Defendants. | No. C 07-00726 SI<br><br>**ORDER GRANTING MOTIONS OF CHASE AND FIA FOR RECONSIDERATION, DENYING EQUIFAX'S MOTION FOR RECONSIDERATION, and DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |

Now before the Court are: (1) plaintiff's motion for leave to file a second amended complaint; and (2) the motions of defendants Chase Bank USA, N.A. ("Chase"), FIA Card Services, N.A. ("FIA"), and Equifax Information Services, LLC ("Equifax") for reconsideration of the Court's order denying their motions for summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court rules as follows.

**DISCUSSION**

**1.　Plaintiff's Motion for Leave to File a Second Amended Complaint**

On March 6, 2009, the day after the Court filed its order granting in part and denying in part defendants' motions for summary judgment, plaintiff filed a motion for leave to file a second amended complaint. [Docket No. 328] The operative complaint in this case is the "corrected" First Amended Complaint, filed December 31, 2007. [Docket No. 113] Plaintiff seeks to add an eighth cause of action, for violation of California Civil Code § 1785.25(a).

Plaintiff appears to argue that he removed a cause of action under § 1785.25(a) from his complaint in response this Court's July 11, 2007 order and that the Court's ruling should be changed

in light of recent Ninth Circuit authority. In its July 11 order, the Court granted defendants' motions to dismiss plaintiff's claims for violations of California Civil Code sections 1785.26, 1785.30, and 1785.31, noting that plaintiff conceded that the Fair Credit Reporting Act preempted these claims. *See* July 11 Order, at *6-7. Plaintiff now argues that in light of *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008 (9th Cir. 2009),[1] plaintiff should be allowed to amend his complaint to add a claim under § 1785.25(a).

Plaintiff is correct that *Gorman* held that § 1785.25(a) is not preempted by the FCRA. *See* 552 F.3d at 1032. Nonetheless, plaintiff's proposal must be rejected. In the complaint that was the subject of the Court's July 11 order,[2] plaintiff did not allege a claim under California Civil Code § 1785.25(a). Rather, plaintiff alleged a claim under California Civil Code § 1785.25(5), which is a nonexistent code section. The Court made no ruling on plaintiff's erroneous § 1785.25(5) claim in its July 11 order. Plaintiff now claims – almost two years after he filed his First Amended Complaint – that the citation to § 1785.25(5) was a typographical error, and he in fact intended to allege a claim under § 1785.25(a).

The Court finds that it would be manifestly unfair to defendants for plaintiff to allege a claim under § 1785.25(a) at this stage in the litigation. When defendants filed their summary judgment motions, plaintiff had never alleged a claim under § 1785.25(a). Defendants therefore had no reason to move for summary judgment on this claim. On January 26, 2009, while the summary judgment motions were under submission, plaintiff filed a "notice of recent decision" informing the Court of the Ninth Circuit's decision in *Gorman*. It was not evident to the Court that by filing the notice of recent decision, plaintiff sought leave to amend his complaint. In any event, the notice of recent decision was an improper way for plaintiff to request this relief.

Accordingly, plaintiff's motion for leave to amend his complaint is DENIED.

---

[1] The California Supreme Court appears to be in agreement with the Ninth Circuit on this issue. As plaintiff has informed the Court through a notice of recent decision [Docket No. 378], on April 29, 2009 the California Supreme Court denied the petition for review of *Sanai v. Saltz*, 170 Cal. App. 4th 746 (2009) (holding § 1785.25(a) not preempted) and depublished *Liceaga v. Debt Recovery Sol'ns, LLC*, 86 Cal. Rptr. 3d 876 (2008) (holding private act of action under California Consumer Credit Reporting Agencies Act preempted).

[2] Plaintiff's First Amended Complaint, filed May 4, 2007.

United States District Court
For the Northern District of California

### 2. Chase's Motion for Reconsideration

Chase seeks reconsideration of the Court's March 5, 2009 order deciding defendants' summary motions. *See* Docket No. 327 ("March 5 order"). Specifically, Chase challenges the Court's finding that Chase is not entitled to summary judgment on the issue of whether it violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, by failing to conduct reasonable investigations regarding a Chase credit card and a Bank One/First USA credit card (the "Bank One card").[3]

Title 15 U.S.C. § 1681s-2(b) provides the only private right of action available against furnishers of credit information, such as banks.[4] *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). It requires banks, upon notice from a reporting agency of a dispute as to information provided by the bank, to take certain steps to investigate the disputed information, and correct the information if necessary. The complete text of § 1681s-2(b) is as follows:

> (b) Duties of furnishers of information [banks] upon notice of dispute.
> (1) In general. After receiving notice pursuant to section 611(a)(2) [15 U.S.C. § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a [bank] to a consumer reporting agency, the [bank] shall
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 U.S.C. § 1681i(a)(2)];
> (c) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [bank] furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
> (I) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.
> (2) Deadline. A [bank] shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the [bank] to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 U.S.C. § 1681i(a)(1) – 30 days] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

---

[3] Chase is successor-in-interest of Bank One, Delaware, N.A, which issued the Bank One card.

[4] For present purposes, the only "furnishers of credit information" involved are banks. For ease of reference, the word "banks" is substituted for "furnishers of credit information" in the relevant passages and statutes.

15 U.S.C. § 1681s-2(b). The bank's investigation pursuant to § 1681s-2(b)(1)(A) must be reasonable. *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1017 (9th Cir. 2009). The reasonableness of an investigation "depends in large part on the allegations provided to the [bank] by the credit reporting agency." *Id.* at 1019 (citation and ellipses omitted). Section 1681s-2(b)(1) does not require banks to repeat earlier investigations if they do not have new information or reason to doubt the result of the earlier investigation. *Id.* at 1020.

As provided in § 1681s-2(b)(1), a bank's duty to conduct a reasonable investigation is triggered when it receives a "notice of dispute" from a consumer reporting agency, such as Experian, Equifax, and TransUnion, which are credit reporting agencies ("CRAs"). On January 22, 2004, TransUnion sent letters to Chase and Bank One informing them of the fraudulent Chase and Bank One credit cards. The January 22, 2004 letter from TransUnion read as follows:

> To whom it may concern:
> The consumer listed above[5] has advised our office that a fraudulent application was submitted to your company with the consumer's identification, **but without** his/her knowledge and consent. As a result, account [number] was established and fraudulent charges may have occurred.
> Based on information provided by the consumer, TransUnion presumes this account to be fraudulent, and therefore has deleted it from the consumer's TransUnion credit file. At the request of our consumer, please immediately check your records for such an account and notify the consumer how he/she may resolve it with your office.
> You and TransUnion must ensure that the account is **unblocked only** if a preponderance of evidence establishes that:
> 1. It was blocked due to fraud
> 2. The consumer agrees that the blocked information was blocked in error
> Additionally, please take all of the necessary steps to ensure that this account **is not** reported by you or by a third party (i.e. collection agency) in your behalf.
> Questions about what we consider a "preponderance of evidence" and requests to unblock any information must be sent **only** to:
> [Address and phone number of TransUnion's fraud department]
> Note: This letter is being sent as a courtesy for the consumer and in no way should be taken in lieu of your own investigation.

*See* Decl. of John Keating in Supp. of Pl. Opp. ("Keating Decl."), ex. C at CH00033 (emphasis in original).

The Court will assume for the purposes of this discussion that these letters were dispute notices

---

[5] The heading references plaintiff's name and address.

within the meaning of § 1681s-2(b)(1).[6] Accordingly, Chase had thirty days to complete a reasonable investigation into the information TransUnion reported as disputed in the January 22 letter. In its March 5 order, the Court found that there were disputed facts as to whether Chase and Bank One completed reasonable investigations. Chase now seeks reconsideration of that ruling.

The Court agrees with Chase that plaintiff has failed to cite evidence that Chase failed to conduct a reasonable investigation. Plaintiff does not dispute that Chase had already closed the account by the time it received the January 22 letter. Plaintiff notified Chase that the account was fraudulent in November 2003 and reported the identity theft to the police department in Los Gatos, California in December 2003. A Los Gatos Police Department record indicates that on December 19, 2003, Chase faxed a copy of the identity thief's fraudulent application to the police department. *See* Decl. of Robert Perry in Supp. of Chase Mot. for Summ. J. ("Perry Decl."), ex. C at PID 660. Chase contends that before faxing the fraudulent application to the police department, Chase confirmed that the account was fraudulent and closed the account. Perry Decl. ¶ 9. The Court agrees with Chase that it had no duty to repeat its earlier investigation after receiving the January 22 letter because the notification merely informed Chase of information that Chase already knew (i.e. the account was fraudulent) and had acted on.

The evidence plaintiff cites in support of his argument that Chase failed to conduct a reasonable investigation upon receiving the January 22 letter fails to establish the existence of a genuine factual dispute on this issue. First, plaintiff points out that instead of deleting the account, Chase listed it as "lost/stolen." Plaintiff's expert testified at deposition, however, that reporting an account as lost/stolen indicates that the account is closed and that the consumer is not responsible for it. Decl. of George G. Weickhardt in Supp. of Mot. for Reconsideration, ex. A (Hendricks Depo.), Tr. 56:9-57:5. Plaintiff's expert also testified that reporting an account as lost or stolen would not have a negative effect on plaintiff's credit score. *Id.* at 43:16-22. The fact that Chase listed the account as lost/stolen rather than deleting it is therefore not evidence that Chase failed to conduct a reasonable investigation of the

---

[6] The Court recognizes that Chase challenges the Court's determination that the January 22 letters constitute dispute notices and that Chase seeks reconsideration of the Court's ruling on this issue. In light of the disposition of Chase's motion, the Court need not decide this issue.

account.

Second, plaintiff claims that throughout 2004, Chase continued to report to CRAs that the fraudulent Chase account belonged to plaintiff. Plaintiff fails to cite admissible evidence in support of this assertion. He relies on a document that purports to be a credit report from Old Republic Credit Services, dated January 21, 2005. *See* Keating Decl., ex. A at PID 401. The Court discussed this document in the March 5 order and found that it was unauthenticated and therefore inadmissible. *See* March 5 Order at 10 n.5. This document contains a statement that Chase reported the account to Old Republic in October 2004. This statement is inadmissible hearsay because plaintiff relies on it for its truth, i.e. to prove that Chase did report the account to Old Republic in October 2004. Accordingly, this document is inadmissible both because it is unauthenticated and because it is hearsay.

Plaintiff also cites an Equifax file that shows the fraudulent Chase account as "suppressed" and includes the notation "10/2004." *See* Keating Decl., ex. E at 156. Plaintiff claims that this notation is evidence that Chase reported the account in October 2004, but he does not cite any evidence in support of this conclusion. The Court finds that without foundational evidence interpreting this computer print-out, a factfinder could not conclude that the notation is proof that Chase reported the account. In addition, this notation is inadmissible hearsay because plaintiff relies on it to prove that Chase reported the fraudulent account to Equifax. Plaintiff has not introduced evidence establishing that this document is admissible as a business record.

Finally, plaintiff cites evidence that Chase reported the identity thief's address as belonging to plaintiff in February 2005 and that Chase sent a letter to the fraudulent address in October 2005. This evidence fails to raise a triable issue as to the reasonableness of Chase's investigation. The January 22 letter from TransUnion did not include the identity thief's address. As Chase's duty to investigate depends on the information provided by the CRA, *see Gorman*, 552 F.3d at 1019, Chase was not required to correct this address. Plaintiff also fails to cite any evidence that he was damaged by Chase's reporting of the identity thief's address.

Plaintiff does not argue that Bank One's investigation of the fraudulent Bank One card was unreasonable. Bank One closed this account on January 27, 2009. Perry Decl. ¶ 20. On February 16, 2004, Bank One requested that Equifax, Experian, and TransUnion delete the Bank One account from

1 plaintiff's credit records. *Id.* ¶ 22. Plaintiff does not cite any evidence indicating that Bank One's
2 investigation was unreasonable.

3 Accordingly, as plaintiff fails to cite evidence from which a reasonable factfinder could conclude
4 that Chase or Bank One did not conduct reasonable investigations after receiving the January 22 letter,
5 the Court finds that Chase is entitled to summary judgment on plaintiff's FCRA claim against Chase.
6 The Court vacates its prior order on this issue and GRANTS Chase's motion for summary judgment on
7 all claims.

### 3. FIA's Motion for Reconsideration

FIA seeks reconsideration of the Court's ruling that there is a factual dispute as to whether plaintiff's FCRA claim against FIA is barred by the statute of limitations. The Court ruled in its summary judgment order that plaintiff's FCRA claims are barred by the statute of limitations if he discovered them before December 18, 2004, unless the statute of limitations is equitably tolled. *See* Mar. 5 Order at 4. The Court also ruled that while no rational factfinder could conclude that plaintiff was mentally incompetent (and thus that the statute was equitably tolled) for *all* of 2004, there was a triable issue as to whether his cancer treatment rendered him temporarily mentally incompetent for some period during 2004. *See id.* at 5. Specifically, plaintiff made following representation in a declaration:

> Starting July 2004, as an inpatient in the Minnesota hospital, I was given ablative (which means death causing) radiation and chemotherapy treatments which caused me to be severely ill, fevers up to 106.8 degrees, black out periods for days to weeks and lost consciousness. As a matter of fact, I don't remember the first couple of months post-transplant in the Minnesota hospital. Through December 2004 again I was in and out of critical condition. I was on life support, could not manufacture or produce my own immune system or blood, took up to 15 medications a day, unable to eat or drink for months at a time, and was fed and kept alive intravenously.

Decl. of Pl. in Supp. of Opp. to Summ. J. ¶ 29. FIA does not cite evidence challenging plaintiff's contention that he was medically incapacitated from mid-July 2004 to late December 2004. Plaintiff has thus met his burden for the purposes of summary judgment of showing that the statute of limitations should be equitably tolled from mid-July 2004 to late December 2004.

FIA received a "notice of dispute" on March 8, 2004. Under the FCRA, FIA had a duty to

7

1  conduct a reasonable investigation within 30 days. *See* 15 U.S.C. § 1681s-2(b)(2). FIA implies that
2  plaintiff's cause of action accrued when FIA allegedly failed to conduct a reasonable investigation
3  within the statutory period (i.e. by April 8, 2004). As the Court discussed in its summary judgment
4  order, however, the statute of limitations under the FCRA accrues on the "date of discovery" of the
5  violation by the plaintiff. *See* 15 U.S.C. § 1681p(1). Accordingly, plaintiff's FCRA claim against FIA
6  accrued when he discovered that FIA had failed to conduct a reasonable investigation into the fraudulent
7  account.

8  Plaintiff concedes that between April 21, 2004 and July 14, 2004, he repeatedly contacted FIA
9  to complain about the fraudulent account and to request that FIA stop making collection calls
10 concerning the account. *See* Pl. Am. Opp. at 18. [Docket No. 241] FIA's call log includes the following
11 notations: on April 21, 2004, plaintiff requested a fraud referral; on May 4, 2004, he stated that he had
12 been a victim of identity theft; on May 14, 2004, he requested that information be sent to an FBI agent
13 in Seattle. Keating Decl., ex. D, FIA 0016. The call log also includes a notation that on May 6, 2004,
14 plaintiff asked the bank to remove the "bad guy's" address. *Id.* at FIA 0015. Plaintiff describes the May
15 6 call as follows: "Drew telephone call with [FIA] stating that entire account and all balances are
16 fraudulent and that he is under FBI witness protection plan; Bank representative states that account is
17 under fraud investigation and that all the can d[o] in interim is postpone the collection calls." Pl. Am.
18 Opp. at 18. Throughout this period, on April 19, April 21, May 6, plaintiff received collection calls
19 from FIA about the fraudulent account. *See id.* Thus, it is undisputed that plaintiff had discovered
20 deficiencies in FIA's investigation by May 6, 2004, at the latest.

21 As plaintiff's FCRA claim against FIA accrued by May 6, 2004, the statute of limitations on this
22 claim expired on May 6, 2006. As the Court has noted, there are factual disputes as to whether the
23 statute of limitations is be tolled from July 14, 2004 to late December 2004. Drawing all reasonable
24 inferences in plaintiff's favor, the statute of limitations could therefore be tolled for as much as five and
25 a half months. In this scenario, plaintiff's claim would expire in mid-October 2006. Plaintiff did not
26 file the complaint until December 18, 2006. Plaintiff's FCRA claim against FIA is therefore barred by
27 the statute of limitations irrespective of the factual dispute on equitable tolling. Accordingly, the Court
28 finds that FIA is entitled to summary judgment on this claim. The Court vacates its prior order on this

8

issue and GRANTS FIA's motion for summary judgment on all claims.

### 4.     **Equifax's Motion for Reconsideration**

Equifax moved for summary judgment on, *inter alia*, "any claims arising from the Bank of America [FIA] account." Equifax Mot. for Summ. J., at 19. The Court ruled that there are factual disputes as to whether Equifax conducted a reasonable investigation in response to requests from plaintiff. As an example, the Court cited Equifax's responses to plaintiff's April 7, 2005 e-mail. *See* Mar. 5 Order at *9. Equifax now argues that it is entitled to a ruling that plaintiff's November 21, 2005 communication with Equifax cannot give rise to liability under the FCRA because Equifax removed the fraudulent account within 30 days. Equifax did not move for summary judgment on the narrow issue of liability arising from plaintiff's November 21 letter. Instead, it framed the issue as "any claims" arising from the Bank of America account. Equifax is not therefore entitled to summary adjudication of this sub-issue.

Equifax also joined FIA's motion for reconsideration. Equifax states only that it adopts FIA's arguments. As noted in the Court's May 5 order, there are disputed facts about whether Equifax conducted a reasonable investigation in response to an April 7, 2005 complaint by plaintiff. This claim is not barred by the statute of limitations, irrespective of equitable tolling.

Accordingly, the Court DENIES Equifax's motion for reconsideration.

///

9

**CONCLUSION**

Plaintiff's motion to amend his complaint is DENIED. [Docket No. 328] FIA's motion for reconsideration is GRANTED. [Docket No. 331] Chase's motion for reconsideration is GRANTED. [Docket No. 332] Equifax's motion for reconsideration is DENIED. [Docket No. 370] The Court VACATES its March 5 order to the extent that it denied the motions of Chase and FIA for summary judgment on plaintiff's FCRA claims. The Court GRANTS the motions of Chase and FIA for summary judgment.

**Equifax and plaintiff shall attend a case management conference on April 2, 2010 at 3:00 pm.**

**IT IS SO ORDERED.**

Dated: March 20, 2010

SUSAN ILLSTON
United States District Judge