John B. Keating (SBN148729)
2995 Woodside Road, Suite 350
Post Office Box 620622
Woodside, California  94062
Telephone:  (650) 851-5900
Facsimile:  (650) 851-5912
E-mail: jbkeating@aol.com

Attorney for Plaintiff,
ERIC ROBERT DREW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIC ROBERT DREW,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANSUNION LLC, NCAC, BANK OF AMERICA, FLEET CREDIT CARD SERVICE, AT&T UNIVERSAL CARD SERVICES, CITIGROUP, BANK ONE CARDMEMBER SERVICES, FIRST USA BANK, N.A., and DOES 1-100,<br>and<br>FIA CARD SERVICES, N.A. [Previously Doe 1], CITIBANK (SOUTH DAKOTA) N.A. [Previously Doe 2], CHASE BANK USA, N.A. [Previously Doe 3]<br><br>Defendants. | **Case No.: CV 07-00726 SI**<br><br>**PLAINTIFF'S MOTIONS IN LIMINE**<br><br>Pretrial Conference:<br>  July 6, 2010<br>  3:30 p.m.<br><br>Trial:<br>  July 19, 2010<br>  Time: 9:00 AM<br>  Ctrm:  10,  19th Floor<br><br>Judge: Honorable Susan Illston |

Plaintiff Eric Robert Drew moves in limine to prevent Defendant  Equifax Information Services, LLC, or its counsel from introducing or attempting to introduce evidence or referring to the following matters and issues at trial:

**MOTION NO. 1:**      **To Preclude Newly Disclosed Employee Testimony as Expert Witnesses Due to Violation of the Rule 26 Expert Disclosure Requirements**

Drew v. Equifax, et al.
USDC, N.D. Calif No. CV 07-00726 SI

PLAINTIFF'S MOTIONS IN LIMINE
Page 1

| | | |
|---|---|---|
| 1 2 | **MOTION NO. 2:** | To Preclude Expert Testimony by Psychiatrist George Bach-y-Rita or Reference to His Report or Attachments Due to Failure to Comply with the Expert Disclosure Requirements |
| 3 4 | **MOTION NO. 3:** | To Preclude Employee Witnesses Testimony Not Within The Witness's Personal Knowledge |
| 5 | **MOTION NO. 4:** | To Limit Equifax To Calling Only Its Identified Trial Witnesses |
| 6 7 | **MOTION NO. 5:** | To Preclude Testimony or Document Evidence or Inference Regarding Actual Specific Actions Taken by Equifax in Investigation, Reinvestigation or Other Consumer Dispute Handling Concerning Plaintiff's Credit File |
| 8 9 | **MOTION NO. 6:** | To Preclude Evidence of or Reference to Plaintiff's Marital Status or Circumstances: |
| 10 | **MOTION NO. 7:** | To Preclude Evidence of or Reference to Family Circumstances and Comments of Birth Mother |
| 11 12 | **MOTION NO. 8:** | To Preclude Evidence of or Reference to Content of Biofeedback and EMDR Treatment Notes of Psychologist Sato-Perry |
| 13 14 | **MOTION NO. 9:** | To Prelude Evidence of or Reference to Plaintiff's Claims Against The Other Defendants, Including the Settlement With TransUnion In This Case |
| 15 | **MOTION NO. 10:** | To Preclude Argument That the Identity Thief, SCCA, or other Defendants are Responsible for Equifax's Credit Reporting Errors. |
| 16 | **MOTION NO. 11:** | To Preclude Use of Argument of Failure to Provide Police Report |
| 17 18 | **MOTION NO. 12:** | To Preclude Introduction of Evidence of or Reference to Changes in Plaintiff's Credit File Prior to the Events at Issue in this Litigation |
| 19 | **MOTION NO. 13:** | To Preclude Testimony about the Handling of Other Consumers' Disputes |
| 20 21 | **MOTION NO. 14:** | To Preclude Equifax Testimony as to the Accuracy Of its Procedures or Credit Reports |
| 22 | **MOTION NO. 15:** | To Preclude Equifax Witnesses From Apologizing At Trial |
| 23 | **MOTION NO. 16:** | To Preclude Mention of Attorneys Fees |
| 24 | **MOTION NO. 17:** | To Preclude Voir Dire Regarding Prospective Jurors' Own Credit Reports |
| 25 26 | **MOTION NO. 18:** | To Preclude Use of Demonstrative Evidence that is Undisclosed or Unfair. |

27

28

---

**Legal Standard for Motions in Limine:**

A ruling on a motion in limine is a preliminary or advisory opinion that falls entirely within the discretion of the district court. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir.1994). The primary purpose of an in limine ruling is to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues. *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir.1983), aff'd 469 U.S. 38 (1984). The decision to exclude relevant evidence pursuant to Rule 403 is committed to the sound discretion of the trial court. *United States v. Love*, 134 F.3d 595, 603 (4th Cir.1998), *Adams v. Nvr Homes, Inc.*, 141 F. Supp. 2d 554 (D. Md. 2001).

## MOTION NO. 1:

**To Preclude Newly Disclosed Employee Testimony as Expert Witnesses Due to Violation of the Rule 26 Expert Disclosure Requirements**

Equifax seeks to present expert testimony based on an untimely Expert Witness Disclosure on April 20, 2010. Equifax had failed to disclose any experts at the time of April 1, 2008 expert witness disclosure deadline set by the Court. (Dkt. 111). Equifax did not disclose any expert witnesses by the required deadline two years ago, did not even file a statement reserving a right to amend or supplement with later designation of expert witnesses, did not file a statement disclosing rebuttal experts by the April 30, 2008 deadline, and prior to this time did not in any way indicate an intention to make use of expert witnesses. Equifax's pre-trial disclosures last year did not specify any expert testimony. As such, Equifax has waived any right to call expert witnesses. As Equifax pursues a nationwide practice of not disclosing expert witnesses in FCRA cases, the last minute surprise disclosure cannot be construed to be a simple mistake in overlooking the disclosure requirements, but rather is a product of intentional unfair litigation strategy.

Equifax's untimely Expert Witness Disclosure seeks to assert some sort of right to present some unspecified expert testimony by some unspecified Equifax person most knowledgeable regarding Equifax procedures for handling consumer disputes (see Expert

Drew v. Equifax, et al.
USDC, N.D. Calif No. CV 07-00726 SI

PLAINTIFF'S MOTIONS IN LIMINE
Page 3

Witness Disclosure attached as Exhibit "A" to the Declaration of John B. Keating, filed herewith). Equifax has not previously indicated that it would rely on opinion testimony of an employee and has not in any form reserved such a right. In addition to having waived the right by failing to previously reserve it, Equifax's disclosure at this date is improper and unfairly prejudicial in failing to comply with the requirement of specifying the nature of the opinions to be rendered.

Equifax does not provide the name of the purported person most knowledgeable, or even specify the general nature or scope of any potential expert opinions. Such a vague reference is insufficient disclosure to allow meaningful discovery. The prejudice is further compounded by the difficulty in achieving expert witness discovery at this point. Pursuant to the arrangements with defense counsel in this case, all expert witnesses were to be produced for deposition in the San Francisco Bay Area. Plaintiff and other defense counsel complied with that cooperative arrangement regarding other expert witnesses nearly two years ago. Counsel for Equifax has not responded to Plaintiff's counsel's inquiry as to whether Equifax will voluntarily produce the proposed employee expert witness for deposition. Counsel for Equifax has not responded to the request that it produce copies of any documents relied upon by any person most knowledgeable who may render an expert opinion. Equifax did not respond to requests to provide the history of testimony of the proposed expert, together with any reports or testimony in other cases.

Equifax failed to comply with the Rule 26 initial disclosure deadline in May 2007, or the April 2008 expert witness disclosure deadline. All the other parties had complied with the Rule 26 disclosure requirements. Equifax failed to provide timely initial disclosures, despite the express comments of the Judge at the Case Management Conference directing the parties to "Comply with Rule 26." After pressure from Plaintiff's counsel, Equifax eventually provided untimely initial disclosures. Yet the only Equifax employee witness reference was to "Alicia Fluellen or other designated representatives of Equifax." (Initial Disclosure attached as Exhibit "B" to the Declaration of John B. Keating, attached herewith). Equifax did not reserve the right to present any expert opinion. When Equifax served its attempted "Supplemental Initial

1  Disclosures," it added the names of Margaret Leslie and Kirby Thompson. (Supplemental Initial

2  Disclosures attached as Exhibit "C" to the Declaration of John B. Keating, attached herewith),

3  but again Equifax did not mention any intent to have its employees present expert testimony.

4  Similarly Equifax's response to written discovery listed only Alicia Fluellen, Margaret Leslie,

5  and Kirby Thompson. In the Joint Pretrial Statement in 2009, Equifax identified three witnesses

6  it intended to call at trial, Alicia Fluellen, Lee Lovvorn, and Margaret Leslie. Equifax does not

7  clarify whether one of those three people is the specified person most knowledgeable to which

8  Equifax refers to in its current attempted expert disclosure.

9         Equifax's Pretrial Witness List identifies Alicia Fluellen as the Equifax witness

10  concerning the handling of consumer disputes, which is the only employee witness subject

11  associated with the Expert Disclosure.

12

13  **MOTION NO. 2:**

14  **To Preclude Expert Testimony by Psychiatrist George Bach-y-Rita or Reference to His
    Report or Attachments Due to Failure to Comply with the Expert Disclosure Requirements**

15

16         Equifax's untimely expert disclosure in late April 2010 also lists the psychiatrist,

17  George Bach-y-Rita. Dr. Bach-y-Rita was hired and disclosed in Spring 2008 by the other

18  defendants now dismissed from this action. Equifax did not disclose Dr. Bach-y-Rita as a expert

19  witness, did not serve any papers reserving the right to call expert witnesses disclosed by other

20  parties or to file a supplemental expert witness disclosure. Equifax failed to serve any rebuttal

21  expert disclosure. Equifax failed to list Dr. Bach-y-Rita in its witness lists and pre-trial

22  disclosures before the prior trial date. Plaintiff's side acted in reliance on Equifax's lack of any

23  intent to call Dr. Bach-y-Rita, both in litigation strategy and in accepting the currently proposed

24  trial date without concern for availability of the witness that would be used to rebut the erroneous

25  factual assertions relied upon for the otherwise unsupportable conclusions made by Dr. Bach-y-

26  Rita.

27         Dr. Bach-y-Rita's psychological conclusions are not based on consideration of the

28  pertinent time frame of events, nor of the actual diagnosis of the treating physicians. Dr. Bach-y-

1   Rita's conclusions are in part based on unreliable incorrect information provided by counsel for

2   the other defendants now dismissed from the action. Plaintiff objects to the public disclosure or

3   filing of the Bach-y-Rita report and attachments thereto containing highly offensive inaccurate

4   statements of fact regarding medical, personal and confidential matters concerning Plaintiff, the

5   falsity of which Dr. Bach-y-Rita and defense counsel have been advised.

6   **MOTION NO. 3:**

7   **To Preclude Employee Witnesses Testimony**
8   **Not Within The Witness's Personal Knowledge**

9          Equifax did not comply with the Rule 26 initial disclosure duty to identify

10  employees with actual knowledge of the handling of Plaintiff's credit file.  Nor did Equifax

11  identify such relevant witnesses in discovery responses.  Equifax has only identified three of its

12  employees as witnesses, Alicia Fluellen, Margaret Leslie and Lee Lovvorn. (See Equifax's

13  Pretrial Disclosure Witness List attached as Exhibit "D" to the Declaration of John B. Keating,

14  attached herewith).  None of these three employee witnesses were involved with or have any

15  direct connection to the handling of Plaintiff's credit file.  All are general litigation testimony

16  specialists used by Equifax.  Since Equifax's witnesses are not experts, they should not be

17  allowed to testify with the broader leeway allowed for a properly qualified expert witness. For

18  example, they should not be allowed to testify to interpretation of the records created by other

19  employees or to hearsay bases for their interpretation or as to their presumptions on how

20  Equifax's policies were applied in this particular case.  Equifax's witnesses should not be

21  allowed to testify to or on any matters that are not personally known by the witness. No witness

22  should be allowed to speculate as to the unrecorded specific actions taken by other employees or

23  discuss the intentions, state of mind, or motives of the other employees of Equifax.

24         Plaintiff seeks to exclude any testimony or reference by counsel for Equifax to

25  opinions of Alicia Fluellen or of Equifax's counsel which are not supported by admissible facts.

26  *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). There has been no disclosure

27  that Ms. Fluellen has personal knowledge of the actions actually taken in handling Plaintiff's

28  credit file.  In other cases, Ms. Fluellen has admitted she is not a fact witness and has no first

1    hand knowledge of any of the events or transactions underlying the lawsuit. Ms. Fluellen is a

2    legal liaison to counsel and continuously testifies on behalf of the defendant. She has no

3    specialized training or knowledge regarding the issues involved in this lawsuit. Ms. Fluellen

4    professes to have a psychology degree and works in oversight on Equifax lawsuits and in the

5    consumer affairs department. Her background and work experience do not meet the requisite

6    Daubert standards and requirements as to any issue in this lawsuit. More importantly, she was not

7    designated as an expert witness and no expert witness report was provided to plaintiff's counsel.

8    See *Thudium v. Allied Products Corp.*, 36 F.3d 767, 769-770 (8th Cir. 1994). Defendant should

9    not be allowed to call any expert witnesses who have not been previously disclosed in

10   accordance with this Court's Case Management Order. Such would be unfairly prejudicial to

11   Plaintiff, and such late disclosure could not be cured by Plaintiff.   Therefore, Equifax's

12   "professional witness," Alicia Fluellen, should not be allowed to testify because she does not

13   have personal knowledge of the investigations actually done by Equifax's employees or agents

14   and, as set forth above, Equifax did not produce the names of the actual employees or agents who

15   conducted any investigation.

16

17   **MOTION NO. 4:**

18   **To Limit Equifax To Calling Only Its Identified Trial Witnesses**

19          Equifax has identified Alicia Fluellen, Margaret Leslie and Lee Lovvorn to be its

20   employee witnesses.  Equifax should be limited to introducing only those three as employee trial

21   witnesses, and not other unidentified persons.  Aside from Kirby Thompson, no other Equifax

22   witnesses were identified in discovery by Equifax.

23          Equifax should thus be prevented from simply presenting anyone at trial they

24   want, solely at their whim, without advance notice.  To allow this would be grossly unfair to

25   Plaintiff.  It also contrary to the purposes of discovery to identify witnesses with knowledge of

26   facts before trial, and usually before the close of discovery to allow any necessary follow up

27   discovery or expert amendments or considerations.

28

1  **MOTION NO. 5:**

2  **To Preclude Testimony or Document Evidence or Inference Regarding
Actual Specific Actions Taken by Equifax in Investigation, Reinvestigation**
3  **or Other Consumer Dispute Handling Concerning Plaintiff's Credit File**

4      Plaintiff moves for an order precluding Equifax from introducing any evidence

5  regarding actual actions taken by Equifax to investigate or reinvestigate disputes or file

6  correction requests with regard to Plaintiff's credit file.  Plaintiff bases this motion on the

7  grounds that Equifax failed to comply with the Rule 26 disclosure requirements and good faith

8  discovery practices and record keeping and has not disclosed any evidence at all with regard to

9  the specific communications or actions, if any, taken by Equifax with regard to investigation of

10  Plaintiff's credit file.

11      Equifax has not identified any witnesses or disclosed the identity of any

12  employees that directly performed any acts with regard to the credit file. Equifax similarly has

13  failed to provide any documents reflecting actual acts of investigation. Equifax nevertheless may

14  seek to introduce evidence conclusions regarding supposed investigation consistent with its

15  general policies with regard to the handling of investigations and reinvestigation, doing so based

16  on the existence of the general Equifax policies and the computer records that Equifax maintains

17  as to the changes made to Plaintiff's credit file.  However, such inference from the general

18  policies and the facts of the ultimate reporting in the file, do not form a basis for proper

19  conclusion as to the specific actions that may or may not have been taken.

20      Equifax produced no information with regard to records of the specific content of

21  telephone calls and other dispute activities with regard to Plaintiff's file.  Equifax produced no

22  information with regard to the correspondence received from the FBI with regard to the file.

23  Equifax produced no information with regard to how it processed specific information provided

24  to it and how it decided whether to provide that information in a notice of dispute to the

25  furnishers.  Equifax provided no information regarding the subsequent handling of the responses

26  by the various furnishers to the dispute notices regarding Plaintiff's credit file, aside from several

27  print-outs reflecting automatic adoption of the verifications by the furnisher.

28      As Equifax has produced no evidence and has a corporate policy of using

Drew v. Equifax, et al.
USDC, N.D. Calif No. CV 07-00726 SI

PLAINTIFF'S MOTIONS IN LIMINE
Page 8

1  electronic dispute codes rather than recording the specific information provided by the consumer,

2  Equifax should not be allowed to suggest a presumption as to what was said based on the

3  minimal electronic coding records kept by Equifax.  Similarly, Equifax has chosen to not

4  adequately analyze the responses of furnishers to dispute notices, but instead to have automatic

5  adoption of whatever electronic information is provided by the furnisher.  Equifax has failed to

6  provide any records of the actual handling of the responses by the furnishers, or notices from the

7  other credit agencies.  Therefore, Equifax should not be allowed to suggest a presumption that it

8  actually properly analyzed such responses, a presumption that could be tested if Equifax kept and

9  produced records of its dispute handling conduct.

10           Nor has Equifax provided full disclosures of the contents of, changes to and

11  publication of Plaintiff's credit file.  Equifax's failure to comply with the Rule 26 disclosure

12  requirements and discovery duties is not isolated to this matter.  A sanctions hearing scheduling

13  order issued today June 7, 2010 in <u>Hettman v. Equifax Information Services LLC, et al</u> ( District

14  Court, Oregon Case No. 3:08-cv-1174) concerns a pattern of failure to disclose available

15  information.   (See Exhibit E to Declaration of John B. Keating filed herewith containing the

16  sanctions motion Declaration of Justin M. Baxter and Exhibits 32-34 thereto concerning

17  sanctions orders issued nationwide against Equifax regarding disclosure and discovery

18  misconduct.)  The dispute concerns delay in depositions and disclosure of "frozen scans."

19           Frozen scans are monthly snapshots of the information in a particular credit file.

20  Until today, June 7, 2010, Plaintiff's side in this case was unaware of the existence of and failure

21  to disclose these key documents, although counsel for Equifax has long been engaged in disputes

22  over the disclosure of the documents in other cases.  Had the documents been properly disclosed

23  in initial disclosure or in response to discovery in this case, the Court and parties could have

24  avoided much of the considerable evidentiary dispute that burdened this litigation at the summary

25  judgment stage in Summer 2008 through March 2010.

26           As the "frozen scan" capability and documents should have been disclosed and

27  produced in this case, and are highly relevant to and would simplify resolution of the issues at

28  trial, Plaintiff requests that the Court issue an order requiring Equifax to immediately produce the

"frozen scans" of Plaintiff's credit file for every month from December 2003 through January 2006.

## MOTION NO. 6:

### To Preclude Evidence of or Reference to Plaintiff's Marital Status or Circumstances:

Plaintiff moves to exclude all evidence of or reference to his marital status or circumstances, or to his family circumstances. In this matter counsel for Defendants aggressively sought discovery as to Plaintiff's marital circumstances and family counseling matters, including discovery of confidential psychologist records and deposition of a psychologist family counseling provider. Defendant Equifax may seek to introduce such irrelevant and prejudicial confidential information for the improper purpose of suggesting negative character inferences at trial. Such information is highly prejudicial and of no probative value as to the credit reporting violations and damages at issue. Plaintiff moves for an order precluding introduction of such private marital status and circumstances evidence or reference to the information directly to the jury without prior introduction before the court and counsel outside of the presence of the jury to determine if the evidence is admissible and proper to present to the jury.

## MOTION NO. 7:

### To Preclude Evidence of or Reference to Family Circumstances and Comments of Birth Mother

Plaintiff moves to exclude all evidence of or any reference to his birth family circumstances or unflattering false comments made by his birth mother. Plaintiff was an adopted child. Discussion of Plaintiff's family circumstances may create confusion and unfavorable misunderstanding by the jury. For example, Plaintiff suffers from an estrangement from his birth mother who at times has attempted to intervene in Plaintiff's life in problematic ways. The birth mother made false and irrelevant comments to medical providers concerning supposed alcohol and drug use by the Plaintiff. The medical providers evaluated and found the suggested drug and alcohol use concerns to be unfounded. Nevertheless, counsel for Defendants pursued discovery

1   on the subject and provided the information to their hired psychologist as a potential basis for

2   expert conclusions.  Since the particular false information is irrelevant and of no probative value

3   to the credit reporting violations and damages at issue in this matter, and would be highly

4   prejudicial if used for no other reason than to suggest negative character inferences at trial,

5   Plaintiff moves for an order precluding introduction of or reference any family status information

6   or the false supposed alcohol or drug use comments made to the health care provider.

7

8   **MOTION NO. 8:**

9   **To Preclude Evidence of or Reference to Content of**
    **Biofeedback and EMDR Treatment Notes of Psychologist Sato-Perry**

10          Plaintiff moves to exclude all evidence of or any reference to information in the

11  notes of psychologist Christopher Sato-Perry.  Mr. Sato-Perry performed a series of biofeedback

12  and Eve Movement Desensitization and Reprocessing (EMDR) treatments regarding Plaintiff's

13  Posttraumatic Stress Disorder condition.  In the course of the treatments Mr. Sato-Perry took

14  detailed notes during sessions where he tested eye and other physical signals while encouraging

15  extreme free association type comments by the patient.  The resulting notes refer to bizarre

16  statements and unusual thoughts, visions and distorted perceptions of events, which often did not

17  reflect realty.   The notes, while possibly appropriate for purposes of the unusual form of therapy,

18  are obviously not reliable as a basis for understanding Plaintiff's medical and social history.

19  Nevertheless, after counsel for Defendants received the notes in discovery, they were used for

20  purposes of further inquiry and given to the defense hired psychological witness for evaluation as

21  a basis for the defense expert's conclusions.  There is a risk that defendant may seek to introduce

22  the notes for an improper purpose of inferring admission of unfavorable untrue facts or to suggest

23  character flaws.   As the information in the notes is irrelevant and of no probative value to the

24  credit reporting violations and damages at issue in this matter, and would be highly prejudicial if

25  used for no other reason than to suggest negative character inferences at trial, Plaintiff moves for

26  an order precluding introduction of or reference to the content of the notes.

27

28

1  **MOTION NO. 9:**

2  **To Prelude Evidence of or Reference to  Plaintiff's**
   **Claims Against The Other Defendants, Including the**
3  **Settlement With TransUnion In This Case**

4            Plaintiff moves to exclude testimony, evidence, or reference to settlements with or

5  claims for relief Plaintiff made against other defendants in this case. Plaintiff brought claims

6  against two other credit reporting agencies, Experian and TransUnion and three banks, Chase,

7  Citibank and FIA. Plaintiff settled his claims against Defendant TransUnion, subject to a

8  confidentiality clause in the settlement agreement . (Equifax has required similar confidentiality

9  provisions in cases it has settled). These claims and the settlement with other defendant are not

10  relevant and would cause confusion and delay. Moreover, allowing evidence concerning the

11  settlement undermines the goal of resolving cases by settlement.

12            Similarly, the jury should not be told that Drew made claims against the other

13  dismissed defendants, because the disposition of their liability is not relevant to whether Equifax

14  violated the law. Therefore Equifax should be prevented from mentioning to the jury anything

15  related to the dismissed claims against the other Defendants.  Even if Drew's other claims were

16  somehow relevant under FRE 401, they should be excluded pursuant to FRE 403. Under FRE

17  403, relevant evidence may be excluded where its probative value is outweighed by prejudice,

18  confusion, or waste of time. Allowing evidence concerning claims against other defendants will

19  produce such a result.  If Equifax is allowed to introduce such evidence, or even refer to other

20  dismissed claims, Plaintiff will have to respond by discussing the details of the claims against

21  each of those defendants, including the legal basis for each claim, the facts supporting each

22  claim, and the reasons how the claims were resolved. Then Equifax will attempt to rebut this

23  evidence. The result will be a mini-trial with the trial about something unrelated to the trial.

24  This will be waste of time, and confusing to the jury. It would also unfairly prejudice

25  Plaintiff

26      A.      **Claims and Settlements against other Defendants are not Relevant**.

27            The claims against the other defendants involve different parties who took

28  different actions. The facts that gave rise to Plaintiff's claims against Experian and Trans Union

---

Drew v. Equifax, et al.                      PLAINTIFF'S MOTIONS IN LIMINE
USDC, N.D. Calif No. CV 07-00726 SI          Page 12

1   are different from the facts in this trial. Experian and Trans Union are competitors of Equifax.

2   They prepared their own credit reports for Plaintiff. Those credit reports contained different

3   information than Equifax's credit reports, because each agency maintains its own database. Trans

4   Union and Experian sold their credit reports on Plaintiff separately from Equifax and most often

5   to different customers than Equifax, and at different times. (The exception is that some

6   "resellers" bought credit reports from all three agencies around the same time, and put each

7   report into a "tri-merge" report. But even then, the information reported by each agency was

8   different). Plaintiff made some different and separate disputes with each defendant, raising

9   different obligations and liabilities. Plaintiff's claims against Trans Union and Experian were

10  based on the reports and actions of those two parties, which had nothing to do with reports or

11  actions by Equifax since each defendant acted independently and had no role in the contents of

12  the other defendant's reports.

13          Evidence is relevant only if "tending to make the existence of any fact that is of

14  consequence to the determination of the action more probable or less probable than it would be

15  without the evidence." Fed. R. Evid. 401. The issues for the jury are whether Equifax violated

16  the Fair Credit Reporting Act and the amount of damages caused by those violations. Evidence

17  relating to claims and settlement with other parties would not tend to prove or disprove whether

18  Equifax violated the FCRA, and the resulting damages.

19          Plaintiff's evidence at trial will be focused on Equifax's violations and the

20  damages caused by those violations. He will not present evidence regarding violations or

21  damages from Experian or Trans Union. Thus, the jury will not see or consider any damages

22  caused by those parties. The jury instructions and the verdict form will ask the jury to determine

23  only the damages that were caused by Equifax. Plaintiff will not recover any damages caused by

24  any other party.

25          In *Kirkpatrick v. Equifax Info. Serv.*, LLC, U.S. Dist. Ct. (Or.) Case No. CV

26  02-1197-MO, Judge Michael Mosman granted a motion in limine to preclude evidence of claims

27  against and settlements with other defendants. In 2007, Judge Robert Jones granted a similar

28  motion in limine in a trial against Equifax. *Valentine v. Equifax Info. Serv.*, LLC, U.S. Dist. Ct.

1  Case No. 05-CV-0801-JO. Additionally, in 2007, a Florida judge granted a comparable motion in

2  limine in a trial against Equifax. *Williams v. Equifax Info. Serv., LLC*, Orange County Circuit

3  Court Case No. 48-2003-CA-9035-0.

4          Equifax may argue that settlements should be admitted because it is entitled to an

5  offset or credit for settlements with other defendants. Under the FCRA case law, Equifax is not

6  entitled to any such offset. Again, the rulings of the District of Oregon are applicable.

7  In *Thomas v. Trans Union, LLC*, Civil No. 00-1150-JE, the court ruled on Trans Union's

8  post-trial motion to reduce the jury verdict by the amounts that the consumer had obtained in

9  settlements with other defendants. The court denied the motion, stating:  This was not a tort

10  action against alleged joint tortfeasors, and Trans Union's reference to tort principles is

11  inapposite. Trans Union has cited, and I have found, no reported decisions supporting the

12  proposition that a FCRA defendant is entitled to an offset of amounts a Plaintiff may receive in

13  settlement from other FCRA defendants.

14          In *Anderson v. Equifax Info. Serv.*, LLC, U.S. Dist. OR Case No. CV-05-1741-ST,

15  Judge Stewart denied Trans Union's motion to compel production of confidential settlement

16  agreements between the consumer and other defendants. Trans Union sought de novo review

17  with Judge Redden. Judge Redden affirmed Judge Stewart, holding that the settlement

18  agreements "are not relevant, given the inability of Trans Union to obtain indemnity or

19  contribution under the FCRA from those defendants." Minute Order, Docket Number 174.

20          Other courts have held there is no right to indemnification or contribution for

21  FCRA claims.  In *McMillan v. Equifax Cred. Info. Serv.*, 153 F.Supp.2d 129 (D. Conn. 2000),

22  the Plaintiff asserted claims against credit reporting agencies and furnishers of credit information

23  ("furnishers") as a result of errors related to identity theft. 153 F.Supp.2d at 130. The Plaintiff

24  settled with all of the defendants except for one furnisher, Associates. Id. at n. 2. Associates

25  attempted to implead the imposter. The court denied the motion, noting that "Courts have found

26  that the FCRA does not provide for the right of indemnification." Id. In *Kay v. First Continental*

27  *Trading, Inc.*, 966 F.Supp.753, 754-55 (N.D. Ill. 1997) the court dismissed a cross claim filed by

28  a defendant credit bureau seeking contribution, holding that contribution is not an available

1   remedy under the FCRA.

2          Finally, even if there could be an offset, that would be a matter for consideration

3   after a verdict, not during trial.

4   **B.      Evidence of other Claims will Result in Unfair Prejudice, Confusion, and
5   Waste of Time.**

6          Even if claims and settlements were relevant under Fed. R. Evid. 401, they should

7   be excluded pursuant to Fed. R. Evid. 403. Under that rule, relevant evidence may be excluded

8   where its probative value is outweighed by prejudice, confusion or waste of time. Allowing

9   evidence concerning claims and settlements against other defendants will result in all three.

10  If evidence of the claims and settlements with Trans Union and Experian is allowed, then

11  Plaintiff will have to explain the details of the claims against those defendants. She will have to

12  discuss the legal basis for each claim, the facts supporting each claim and the reason for settling

13  each claim for the amount agreed to. Moreover, the amount of each settlement does not even

14  represent the amount of damages the other defendant may have caused. Settlements are based on

15  many factors. In addition, each settlement included Plaintiff's attorney fees and costs. If one even

16  hoped to figure out the damages included within each settlement, there would have to be an

17  allocation for the respective attorney fees and costs attributable to each settlement.

18  Of course, Equifax will want to cross-examine Plaintiff on these matters and attempt to

19  refute the evidence offered by Plaintiff. The result will be a series of "mini-trials" regarding the

20  claims Plaintiff made against Experian and Trans Union right in the middle of the trial on

21  Plaintiff's claims against Equifax. The jury will become confused as to which agency issued

22  which reports on which dates, and Plaintiff's communications to each of them (especially

23  considering that Equifax and Experian have similar names). Much time will be wasted. Plaintiff

24  may also be unfairly prejudiced because the jury would hear about payments for damages caused

25  by those defendants, yet think they cover damages caused by Equifax.

26  **C.      Confidential Settlements are not Admissible.**

27         It is important to the settlement process that the settlements remain confidential.

28  Protecting the confidentiality of settlement agreements promotes settlement. Parties routinely

1    insert confidentiality provisions into such agreements.

2            Settlements, compromises, and offers to compromise are generally not admissible

3    under Fed. R. Evid 408. Indeed, the purpose behind Rule 408 is to promote "the public policy

4    favoring the compromise and settlement of disputes." Notes of Advisory Committee on Rules,

5    citing, *McCormick* on Evidence §§ 76, 251. Courts are extremely reluctant to compel production

6    of a confidential settlement agreement. "The strong public policy favoring settlement of disputed

7    claims dictates that confidentiality agreements regarding such settlements not be lightly

8    abrogated." Flynn v. PGE Corp., 1989 U.S. Dist. LEXIS 11219, at 4 (D. Or. 1989); *Kalinauskas*

9    *v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993).

10           Discovery is not allowed as to settlement efforts, since it cannot lead to admissible

11   evidence. FRE 408. Public policy favors non-discoverability of settlement agreements and

12   negotiations leading to settlement agreements. *Goodyear Tire & Rubber Co. v. Chiles Power*

13   *Supply, Inc.*, 332 F.3d 976, 980-81 (6th Cir. 2003) (communications in furtherance of settlement

14   are privileged and not discoverable), *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042, 1046

15   (2d Cir. 1992) (settlement agreements are not discoverable); *Mars Steel Corp. v. Continental*

16   *Illinois Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (settlement

17   negotiations are not discoverable, because such discovery would give a party information about

18   an opponent's strategy); *Centillion Data Systems, Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552,

19   n.1 (S.D. Ind. 1999) (in the settlement context, courts require a "particularized and/or heightened

20   showing that the settlement information sought is relevant and likely to lead to admissible

21   evidence"); *Bottaro v. Hatton Associates*, 96 F.R.D. 158, 160 (E.D. N.Y. 1982) (even under the

22   broader pre-amendment discovery standard, strong public policy favoring settlements precludes

23   discovery of settlement agreements absent showing a likelihood that admissible evidence will be

24   generated by the dissemination of the terms of a settlement agreement).

25

26

27

28

1   **MOTION NO. 10:**

2   **To Preclude Argument That the Identity Thief, SCCA, or other Defendants
    are Responsible for Equifax's Credit Reporting Errors.**

3

4         Equifax is not entitled to any offset or credit for settlements made with those

5   defendants and the case law under the FCRA is clear and uniform in that regard. Three courts

6   have directly addressed this specific issue. In *McMillan v. Equifax Credit Information Services*,

7   153 F.Supp.2d 129 [U.S.D.C. Conn. 2000], the Judge would not allow the defendants, in a credit

8   reporting case arising from application fraud, to implead and join the imposter, plaintiff's son, as

9   a defendant in an effort to lay off liability or to seek contribution. The *same result haled in*

10  *another identity theft case in Texas:* Maricela Mendoza v. Experian, et al, CIV-H-02-2465

11  [U.S.D.C. S.D. Tex.]. The Judge denied the motion and held that the imposter did not cause the

12  Bank [movant] to violate the Fair Credit Reporting Act requirements. This opinion is consistent

13  with earlier cases refusing to permit contribution claims where a defendant violated the FCRA. It

14  served no purpose to permit a defendant to lay off its liability for violating the Act.

15        Other courts have refused to permit indemnification or contribution to defendants

16  in FCRA cases. Any right of contribution for liability arising from the violation of a federal

17  statute is a matter of federal law and not state law. *Northwest Airlines v. Transport Workers*, 451

18  U.S.77, 67 L.Ed.2d 750, 101 S.Ct. 1571 [1981]; *Doherty v. Wireless Broadcast Systems*, 151

19  F.3d 1129 [9th Cir. 1998]; *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456 [1st Cir. 1985].

20  The Doherty, supra, court found that rights to indemnification or contribution can arise only

21  through an affirmative grant of such rights by statute by Congress. This grant must be express or

22  implied. The only other way is through federal common law. Thus far, the courts have found no

23  such rights. The Northern District of Illinois in *Kay v. First Continental Trading*, 966 F.Supp.

24  753 [U.S.D.C. N.D. Ill. 1997], held that there is no right to contribution to a defendant who has

25  violated the Fair Credit Reporting Act. Likewise, the Northern District of California in *Irwin v.*

26  *Mascott*, 94 F.Supp.2d 1052 [U.S.D.C. N.D. Cal. 2000], found no contribution right available to

27  a defendant who violated the sister statue to the FCRA, the Fair Debt Collection Practices Act

28  [FDCPA], which is also contained in the Consumer Credit Reform Act of 1968, 15 U.S.C. 1600,

1   et, seq. The same result haled in *Wiggins v. Phillip Morris, Inc.*, 853 F.Supp. 470 [U.S.D.C. D.C.

2   1994].

3   **MOTION NO. 11:**

4   **To Preclude Use of Argument of Failure to Provide Police Report**

5         Equifax has indicated its intention to argue that Plaintiff did not provide Equifax

6   with a copy of a police. Plaintiff seeks to exclude any testimony or reference by counsel for

7   Equifax to these facts as these facts are entirely irrelevant. Plaintiff fully complied with the

8   FCRA, and Equifax 's reinvestigation is standardized such that Equifax would not have made

9   contact with the impostor nor would a police report have provided any indicia of the accuracy of

10  Plaintiff's complaints and disputes. In fact, anyone can file a police report. Equifax was

11  required to conduct a real reinvestigation and <u>not</u> a perfunctory CDV/ACDV process. *Johnson v.*

12  *MBNA America Bank*, 357 F.3d 426 [4th Cir. 2004], held that the reinvestigation duty is not one

13  that can be reduced to "re-check" and useless parroting. Equifax should be denied the ability to

14  raise frivolous argument at trial and to attempt to play irrelevant testimony at trial. Plaintiff had

15  no legal duty to provide information. This is particularly important since Equifax did not ask for

16  it and would not have used it anyway, under their own stated procedures and policies. Equifax's

17  counsel cannot be allowed to repair Equifax's defective procedures through raising frivolous

18  argument and issues in evidence. Equifax has not produced documentation of whether it

19  considered the FBI correspondence forwarded to identifying Plaintiff as an identity theft victim.

20  Equifax does not produce any evidence that Equifax considers, retains or keeps records regarding

21  receipt of FBI correspondence or police reports. As such, Equifax should not be allowed to deny

22  receipt of the FBI correspondence merely based on Equifax's failure to find a computer entry

23  concerning the correspondence.

24  **MOTION NO. 12:**

25  **To Preclude Introduction of Evidence of or Reference to Changes in Plaintiff's Credit File**
    **Prior to the Events at Issue in this Litigation**

26        Defendant's Exhibit list reflects an intent to introduce Equifax produced documents EIS-

27  Drew_00001 - EIS_Drew_00026. Those documents consist of printout of Equifax records of

28

1   Plaintiff's credit file and corrections and changes to the file made in 2002 and 2003 prior to the

2   identity theft events leading to the false account reporting at issue in this case. As such, the

3   records are irrelevant to the issues of liability at trial and have no probative value. Equifax may

4   intend to introduce these records for the improper purpose and unfair prejudice of suggesting that

5   Plaintiff was unduly aggressive in seeking correction of his credit file, was a repeat claimant or

6   was particularly knowledgeable about credit reporting procedures. In fact, the requested changes

7   were made by a credit repair company of with which Plaintiff had only minimal contact. The

8   evidence should be precluded pursuant to Evidence Rule 403 as the potential prejudice

9   outweighs any probative value.

10

11  **MOTION NO. 13:**

12  **To Preclude Testimony about the Handling of Other Consumers' Disputes**

13          Plaintiff moves to exclude testimony, evidence, or reference to reinvestigations

14  performed by Equifax employees or agents which were not disclosed during discovery. In a prior

15  trial, Equifax witnesses discussed what it deemed successful reinvestigations performed on

16  behalf of other consumers. Permitting Equifax to testify regarding reinvestigations of disputes for

17  other consumers is problematic for many reasons. First, Equifax has not disclosed any specific

18  consumers it intends to reference. This prevents Plaintiff from conducting any inquiry into the

19  circumstances of those particular reinvestigations. The discovery rules preclude using

20  information that was not produced: "If a party fails to provide information or identify a witness as

21  required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to

22  supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially

23  justified or is harmless." Fed. R. Civ. Proc. 37(C)(1).

24          This problem is further exacerbated where the Equifax witness testifies generally

25  about helping "consumers." The jury will not know the numbers of other consumers involved, the

26  reasons for the results of particular reinvestigations, or circumstances of the individual cases.

27  Those reinvestigations may also involve different types of disputes, or instances in which the

28  furnisher told Equifax to correct the disputed information. Finally, any testimony about what

consumers said to an Equifax employee would be inadmissible hearsay. Fed. R. Evid. 801, 802.

## MOTION NO. 14:

**To Preclude Equifax Testimony as to the Accuracy**
**Of its Procedures or Credit Reports**

Plaintiff moves to exclude Equifax for introducing evidence relating to the accuracy of Equifax's procedures for maximum possible accuracy or of its credit reports. Equifax has not produced any studies on the accuracy of its procedures to maintain accuracy or its credit reports. The General Accounting Office indicates that Equifax (and Experian and TransUnion) said they did not have the data to specifically respond to a request that the each provide data on the frequency, type, and cause of errors in credit reports. See Consumer Credit: Limited Information Exists on Extent of Credit Report Errors and Their Implications for Consumers, General Accounting Office, July 31, 2003, GAO-03-1036T, page 2.  Further, Equifax has not properly designated any expert witness to testify on the accuracy of either its procedures or of its credit reports, or for any other matter. Therefore neither Equifax or its counsel should be permitted to refer to an 'accurate system' in general terms or similar words to communicate the same effect or meaning.

## MOTION NO. 15:

**To Preclude Equifax Witnesses From Apologizing At Trial**

Plaintiff moves to exclude Equifax from introducing any evidence, or statements by defense counsel, that a witness, defendant or counsel is sorry for the actions of defendant or its agents or contractors. This testimony is improper, irrelevant, and was not produced during discovery or this litigation, the reality of which now that this case is proceeding to trial, is completely inconsistent with Equifax being sorry for its actions in any way whatsoever. Defendant's employee witness designated to testify in this case and the principally used witness in many Equifax cases has previously used the apology as an effective testimony strategy in other cases, despite Equifax's practice of failing to correct the recurring problems.

1  **MOTION NO. 16:**

2  **To Preclude Mention of Attorneys Fees**

3          Equifax should not be allowed to refer to the fee shifting provisions of the FCRA

4  or comments suggesting the case is about attorneys fees. Attorneys fees are not decided by the

5  jury.

6

7  **MOTION NO. 17:**

8  **To Preclude Voir Dire Regarding Prospective Jurors' Own Credit Reports**

9          Plaintiff moves to preclude questions during voir dire regarding prospective

10  jurors' credit reports.  Prospective jurors may believe that reports they receive from Equifax or

11  other agencies show all the information being reported about them. In fact, the credit reports that

12  consumers receive directly from credit reporting agencies may be significantly different from the

13  reports the credit bureaus send to creditors. When a consumer orders a credit report, they are

14  required to provide numerous pieces of identifying information, including name, birth date,

15  social security number, addresses, pieces of identification or utility bills. This results in a very

16  narrow search for information about that consumer in the agency's files.

17          In contrast, creditors can receive credit reports in response to providing the agency

18  with only a name and address. This results in a greater amount of data being included on a report

19  to a creditor. In addition, the agency will often send multiple reports representing different credit

20  files, or will combine files into one merged report and provide that combination report. Thus, a

21  prospective juror may have viewed his or her credit report and believed that the agency was

22  reporting only accurate information, when creditors were receiving additional, inaccurate

23  information. If Equifax questions jurors regarding their "credit reports," jurors could mistakenly

24  say that their reports were accurate. This would prejudice Plaintiff by giving the impression that

25  jurors' consumer reports are accurate when they potentially are not.

26          In addition, jurors may have seen reports from Trans Union or Experian that

27  appeared accurate. If the jurors state that their reports were accurate, it could mislead other jurors

28  into thinking those "accurate" reports were prepared by Equifax.

**MOTION NO. 18:**

**To Preclude Use of Demonstrative Evidence that is Undisclosed or Unfair.**

        Plaintiff seeks to exclude any testimony or reference by counsel for Equifax to demonstrative evidence which is not previously disclosed and determined to meet the standards and rules for use and reference, including fairness and accuracy.  Demonstrative evidence may further be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; such determination is within trial court's considerable discretion. FRE 403; *Westcott v. Crinklaw*, 68 F.3d 1073, 1077 [8th Cir.1995]; *Young Dental Mfg. Co., Inc. v. Q3 Special*, 112 F.3d 1137 [C.A.Fed. (Mo.),1997]. Plaintiff seeks to avoid undue prejudice, confusion of the issues, or misleading the jurors. Plaintiff will need the opportunity to determine whether such evidence misrepresents the facts or otherwise distorts facts in any way other than oversimplifying the facts. Plaintiff will further need ample opportunity to cross-examine any witnesses that have relied on the aid in an effort to lessen the aid's evidentiary weight.  Id. Equifax bears the burden of proving any demonstrative evidence meets these standards and rules. *Jackson v. Fletcher*, 647 F.2d 1020, 1027 [10th Cir.1981]; *U.S. v. Gaskell*, 985 F.2d 1056 [11th Cir.1993] [Fla.]. Whether to admit or exclude demonstrative evidence is matter within sound and broad discretion of district court. *Petty v. Ideco, Div. of Dresser Industries, Inc.*, 761 F.2d 1146 [5th Cir. 1998] [Tex.].

DATED: June 7, 2010                    Respectfully submitted,

                                        John B. Keating
                                        Attorney for Plaintiff Eric Robert Drew